Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Austin Kaplan, TX Bar No. 24072176*
Andrew Eckhous, TX Bar No. 24127926**
KAPLAN LAW FIRM, PLLC
2901 Bee Cave Rd, Suite G
Austin, TX 78746
Telephone: (512) 814-8522

**Pro Hac Vice* application forthcoming
**Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and Others Similarly Situated*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Selena Connell, Jeffrey "Beau" Wengert, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ByteDance, Inc. d/b/a/ TikTok<br><br>Defendant. | **Case No.: 5:24-cv-07859-NC**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (PER ECF NO. 49)**<br><br>Hearing Date: March 12, 2025<br>Time:           11:00 a.m.<br>Place:          Courtroom 5, 4th Floor<br>Judge:          Hon. Nathanael Cousins |

## I. INTRODUCTION

As the Court's Supplemental Briefing Order (ECF No. 49) recognized, Defendant's motion to compel arbitration implicates multiple documents, which the Opt-in Plaintiffs were required to sign, but which changed over time. All Plaintiffs received and signed offer letters to accept employment with Defendant. Defendant then required that all Plaintiffs sign a Confidentiality and Inventions Assignment Agreement ("CIAA"). For Plaintiffs who started work before May 2021, the CIAA contained dispute resolution policies ("CIAA Plaintiffs"). After May 2021, the arbitration policy was moved from the CIAA to another part of the agreement, titled Mutual Agreement to Arbitrate ("MAA"). Therefore, most Plaintiffs[1] who started after May 2021 signed a CIAA and an MAA ("MAA Plaintiffs").

As explained in Plaintiffs' previous opposition brief, while Defendant's documents are superficially mutual, they are actually drafted so as to give Defendant virtually unlimited ability to bring claims in court, without ever being obligated to arbitrate, and to create other non-mutual obligations. (ECF No. 41 at 15-20.[2])

### A. The Court Should Decide, as an Issue of Formation, that the CIAA and MAA – but not the Offer Letters – are the Relevant Contracts.

Plaintiffs submit that, for any version of the agreements here, the relevant agreement for the Court's consideration *includes* the CIAA, and *excludes* the offer letter. The arbitration provisions of the offer letters should not be considered because, even though they were sometimes executed as part of the same transaction, the subsequent documents are inconsistent with the terms of the offer letters (in that they contain one-sided exceptions to arbitration for Defendant that destroy the mutual obligation to arbitrate), they deal with the subject of dispute resolution more comprehensively, and they contain integration clauses.

On the other hand, for the MAA Plaintiffs, the CIAA and MAA must be considered together since they address overlapping topics and are executed together. For the MAA Plaintiffs, the CIAA

---

[1] Plaintiff Melgar signed a version of the CIAA that refers to an MAA, but never signed an MAA. Defendant has failed to prove that any valid arbitration agreement exists. (ECF No. 41 at 29.)
[2] All page references in electronically filed documents are to the blue ECF-stamped page numbers.

SUPPLEMENTAL BRIEF RE: MOTION TO COMPEL ARBITRATION        5:24-CV-07859 NC

refers explicitly to the MAA, and, crucially, the CIAA addresses the employer's ability to litigate its claims in court for any "impending or existing violation" of the numerous obligations Defendant imposes on its employees. (ECF No. 34-2 at 33.)

### 1. Which Documents to Consider is a Formation Question for the Court.

In order to resolve Defendant's motion, the Court must first determine whether a valid arbitration agreement exists that covers the dispute at issue. "To satisfy itself that such agreement exists, the court **must resolve any issue that calls into question the formation** or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis added). It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.* at 296. In *Granite Rock*, the Court held that a question about when a collective bargaining agreement was ratified "require[d] judicial resolution here because it relates to Local's arbitration demand in such a way that the District Court was required to decide the CBA's ratification date in order to determine whether the parties consented to arbitrate the matters covered by the demand." *Id.* at 304. More recently, the Supreme Court stated in a similar context that "if parties have multiple agreements that conflict" about gateway arbitrability issues, "the question whether these parties agreed to arbitrate arbitrability can be answered only by determining which contract applies." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024).

Courts from all the relevant states recognize that the question of whether multiple documents are to be treated as part of the same contract can be addressed as an issue of contract formation. *Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1047 (N.D. Cal. 2024) ("California Civil Code § 1642 provide[s] that '[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.'"); *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 428 n. 14 (S.D.N.Y. 2012) ("In the absence of anything to indicate the contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eyes of the law, one instrument.") (quoting 2 N.Y. Jur. 2d *Contracts* § 258 (2011)); *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*, No. 11 C 3274, 2011 WL

5170287, at *3 (N.D. Ill. Oct. 31, 2011) ("Furthermore, 'instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together.'") (quoting *Gallagher v. Lenart*, 226 Ill.2d 208, 233, 314 Ill.Dec. 133, 874 N.E.2d 43 (2007)); *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (recognizing "well-established law that instruments pertaining to the same transaction may be read together . . . and that a court may determine, as a matter of law, that multiple documents comprise a written contract.").

The Court should determine what documents formed any agreement to arbitrate.

### 2.  The Court Must Consider the CIAA for all Plaintiffs.

For the CIAA Plaintiffs (those Plaintiffs whose arbitration agreements were contained in the CIAA), there should be no dispute that the Court's analysis must consider the CIAA.

For the MAA Plaintiffs (those whose onboarding included a CIAA as well as an MAA), Plaintiffs previously argued, citing *Ly v. Tesla*, that the Court should consider the Confidentiality and Inventions Assignment Agreement in its review of the motion to compel arbitration since that document is part of the same onboarding process, and addresses overlapping topics about the Parties' respective rights and the procedures for resolving disputes. (ECF No. 41 at 8–9.) In *Ly*, Judge DeMarchi found that a Non-Disclosure and Inventions Assignment Agreement that was executed on same day as arbitration agreement, as part of employee onboarding, both of which addressed employment disputes, should be treated as part of the same contract. 757 F.Supp.3d at 1047. Similarly, Judge Lin in the San Francisco Division recently held that a Non-Disclosure and Dispute Resolution Agreement, which was required at the time of onboarding and was part of one consolidated DocuSign envelope with a driver activation form and independent contractor agreement, should be considered as part of the employment contract. *Herrera v. OnTrac Logistics, Inc.*, Case No. 3:25-cv-00022-RFL, Dkt. No. 52 (N.D. Cal., May 14, 2025).[3]

Here, as in *Ly* and *Herrera*, the MAA Plaintiffs received and signed a CIAA at the same time, and as part of the same transaction as their MAA. Both the CIAA and the MAA deal with the terms

---

[3] A copy of this order is attached hereto as **Exhibit 1**.

SUPPLEMENTAL BRIEF RE: MOTION TO COMPEL ARBITRATION      5:24-cv-07859 NC
3

of employment and procedures for resolving employment disputes. Importantly, the CIAA is inextricably bound to the MAA, since both deal with what claims may be brought in court versus arbitration. Particularly, the CIAA carves out the exceptions to arbitration that swallow any purported mutuality, stating:

> Company shall be entitled to obtain injunctive relief prohibiting such violation or threatened violation, in addition to any other rights and remedies available to it in contract, at law, in equity, by statute or otherwise. Employee agrees and consents that Company shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.

(ECF No. 34-2 at 33.) All relevant states recognize that these agreements are part of the same contract of employment, and the Court should consider them together in evaluating Defendant's motion.

### 3. The Court Should Not Consider the Offer Letters.

As Plaintiffs previously argued (ECF No. 41 at 28), the Court should not compel arbitration based on the offer letters here. Additionally, as a question of contract formation, the language of the MAAs and CIAAs demonstrates why the offer letters do not control.

For both the MAA and CIAA Plaintiffs, an offer letter was the first document Plaintiffs signed, often before they started work. The CIAA (and MAA, for the MAA Plaintiffs) then followed as an attachment, or was signed at the start of a Plaintiff's work. The CIAA and MAA were thus executed after the offer letter. Indeed, the offer letters themselves stated that the substantive terms of any arbitration agreement would be set out in the documents that followed the offer letters,[4] and both the CIAA and MAA contain integration clauses demonstrating that they—and not any prior agreements—will control. For MAA Plaintiffs, the MAA states:

> 9. **Enforcement Of This Agreement.** This Agreement is the full and complete agreement about arbitration of disputes covered by this Agreement. Any contractual disclaimers the Company has in any handbooks, other agreements, or policies do not apply to this Agreement.

---

[4] See ECF No. 34-2 at, e.g., 17 ("As set forth more fully in the arbitration agreement attached hereto as Attachment B (the 'Mutual Agreement to Arbitrate')…") and 206 ("As a condition of your employment, you are also required to sign and comply with the Confidentiality and Inventions Assignment Agreement … Please note that we must receive your signed Confidentiality and Inventions Assignment Agreement before your first day of employment.")

ECF No. 34-2 at 21. For CIAA Plaintiffs, the integration clause is more robust, again making clear that it contains the entire agreement on this topic:

> **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between Employer and Employee relating to the subject matter herein and, as of the Effective Date, supersedes all prior discussions between the parties. Employee understands and acknowledges that (i) no other representation or inducement has been made to Employee, (ii) Employee has relied on Employee's own judgment and investigation in accepting employment with Employer, and (iii) Employee has not relied on any representation or inducement made by any officer, employee or representative of Employer. Employee understands and agrees that any subsequent change or changes in Employee's duties, salary or compensation will not affect the validity or scope of this Agreement.

ECF No. 34-2 at 221 (Naas CIAA).

Based on the plain language above, the MAAs and the CIAAs are fully integrated: the parties intended those documents "to be the 'complete and exclusive statement of the terms of the agreement.'" *Munson v. Splice Commc'ns, Inc.*, No. 12-CV-05089-JCS, 2013 WL 6659454, at *18 (N.D. Cal. Dec. 16, 2013) (citing *Esbensen v. Userware Internat., Inc.,* 11 Cal.App.4th 631, 636 (1992). Where an agreement is fully integrated, as here, outside evidence "is inadmissible even to add terms not inconsistent with the writing." *Id*. Further, "whether the agreement in question is partially or fully integrated is a question of law to be determined by the court." *Id.* Illinois, New York, and Texas courts take the same view.[5]

Most importantly, the offer letters' arbitration provisions are <u>inconsistent</u> with the CIAAs that follow: the offer letters do not explain any of the employer's rights to litigate in court, or explain any of the other ways that the allegedly mutual arbitration provisions are skewed so heavily to the

---

[5] *Olin Corp. v. Ins. Co. of N. Am.*, No. 84-CV-1968, 2016 WL 1048057, at *3 (S.D.N.Y. Mar. 11, 2016) ("New York's parol evidence rule generally bars admission of extrinsic evidence to vary or contradict the terms of a fully integrated writing."); *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 673 (7th Cir. 2015) ("A written contract is fully integrated when it is intended by the parties to be a complete and exclusive statement of the agreement's terms; a contract is only partially integrated if it is intended as an incomplete expression (though a final expression on certain terms). . . When a contract is fully integrated, the parol-evidence rule bars evidence of prior or contemporaneous agreements within the scope of the written contract.") (citations omitted); *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) ("A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.").

employer's favor. (*See* ECF No. 41 at 9–11, 15–20 (discussing harsh, one-sided terms in CIAA).) Had Defendant not undermined the arbitration provisions in its offer letters through the subsequent documents, the outcome here might be different. *See AIG Specialty Ins. Co. v. ExxonMobil Oil Corp.*, No. 05-23-00719-CV, 2024 WL 1089475, at *5 (Tex. App. Mar. 13, 2024), *review denied* (Nov. 15, 2024) ("while there is a general presumption arbitration is favored, when there is an issue of whether an arbitration provision conflicts with other disputed resolution provisions, the presumption disappears.").

Thus, even though the offer letters may have been executed close in time to the CIAAs and MAAs, or as part of the same process, the integration clauses in the MAAs and CIAAs, together with the fact that the CIAAs and MAAs always follow the offer letters while containing inconsistent terms, distinguishes the offer letters and renders any dispute resolution provisions in those documents irrelevant here. *See*, *e.g.*, *AIG Specialty Ins. Co.*, 2024 WL 1089475, at *5 ("if the parties to one contract execute another whose terms are so inconsistent with the first that they both cannot stand, the first agreement is conclusively presumed to have been superseded by the second. An integration clause is in essence the merger doctrine memorialized.") (citation omitted); *Garcia v. ISS Facility Servs., Inc.*, 2020 WL 13907337, at *2 (N.D. Cal. Mar. 20, 2020) (where employee initially signed an arbitration agreement but later signed a mediation agreement with an integration clause, court rejected employer's argument that first document was still in effect to require arbitration).

As a matter of contract formation, the Court should not consider any language in the offer letters regarding arbitration.[6]

**B. The Non-Mutual Arbitration Provisions Render the Agreements Illusory.**

Under the law of all three relevant states, the arbitration provisions are illusory because they purport to bind both parties to arbitrate, but in fact allow Defendant to proceed in court on any

---

[6] For the same reasons that the defective agreements cannot be cured by severance (ECF No. 41 at 26–28), it would be inappropriate, should the Court to find that the CIAAs and MAAs are unenforceable because the arbitration provisions are illusory, to compel arbitration based on the offer letters. Doing so would create a perverse incentive for employers to attempt to impose harsh, one-sided, unenforceable arbitration requirements in their onboarding documents which they could simply jettison in favor of inconsistent mutual arbitration policies when confronted.

potential claim. The lack of mutuality presents a problem of formation, since it implicates a lack of consideration, unless other consideration can support the requirement that the employees must arbitrate their claims. Plaintiffs reiterate their arguments that, even if the Court determines any of these questions <u>could</u> be delegated to an arbitrator through a valid delegation clause, there are fatal problems with the delegation clauses here. (*See* ECF No. 41 at 11 – 15.)

### 1. Illinois

Under Illinois law, an arbitration agreement is illusory, and thus unenforceable, where it is separate from other consideration and, while "purporting to bind each party to the arbitration agreement, . . . subsequently creates a total exclusion of one party's obligation to arbitrate." *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 627 (Ill. App. 1st Dist. 2005) (quoting *Lopez v. Plaza Finance Co.,* No. 95–C–7567, 1996 WL 210073 (U.S. Dist. April 26, 1996)). Accordingly, it is a two-step process to determine if the CIAA and/or MAA is illusory and therefore unenforceable. First, a Court must determine whether the consideration provided for the employee's agreement to arbitrate is separate from the mutual promise to arbitrate, if it is, then the Court must then determine if it is illusory. Since this is a question of contract formation, it is proper under Illinois law for a court rather than an arbitrator to make the determination on consideration. *Id*. at 624 ("When deciding whether there is a valid agreement to arbitrate, 'courts generally should apply ordinary state-law principles that govern the formation of contracts.'") (quoting *Hutcherson v. Sears Roebuck & Co.*, 342 Ill.App.3d 109, 115, 276 Ill.Dec. 127, 793 N.E.2d 886 (2003)).

Beginning with step one—whether an arbitration agreement is a separate agreement—in *Vassilkovska*, the Court found it was, explaining:

> The Arbitration Agreement also contains specific survival language separate and apart from the purchase of the automobile, or the retail installment contract. Specifically, the parties' Arbitration Agreement states, "[t]his Arbitration Agreement shall, with respect to such dispute, survive the termination or expiration of any purchase order and/ or bill of sale, or any retail installment contract executed at the time the vehicle is purchased." As such, the Arbitration Agreement is a contract in its own right and must be reviewed to ensure that it contains the elements necessary for the formation of a contract. "When deciding whether there is a valid agreement to arbitrate, 'courts generally * * * should apply ordinary state-law principles that govern the formation of contracts.'"

*Vassilkovska*, 830 N.E.2d at 623–24 (citation omitted). As explained in § A.3., *supra*, both the MAAs

and CIAAs here contain extremely similar language. (*See* ECF No. 34-2 at 21 (Connell MAA); 221 (Naas CIAA)). Similar to the agreement to arbitrate in *Vassilkovska*, these documents claim they "will survive the termination of your employment, and the expiration of any benefit[]." *Id*. Accordingly, this Court should view the arbitration agreements as based on separate consideration, and review them on their own to determine whether there is sufficient consideration to make them enforceable. The fact that the MAAs and CIAAs are connected to an offer of at-will employment is not sufficient consideration to make them enforceable on their own under Illinois law because of the language cited above.

Given that, for both the CIAA Plaintiffs and the MAA Plaintiffs, the arbitration agreements are separate from other consideration, the next step in this Court's analysis is to determine whether the agreements are illusory and lacking consideration and, therefore, unenforceable. Under Illinois law, an agreement is unenforceable if it "creates a total exclusion of one party's obligation to arbitrate." *Vassilkovska*, 830 N.E.2d at 626. In *Vassilkovska*, the Court found that Woodfield's promise to arbitrate was "illusory" and there was no consideration because "Woodfield made sure that as to every conceivable right that it might want to press, the arbitration provision did not stand as a bar to Woodfield's going to court." *Id*. at 624. However, the other party would still be required to arbitrate the vast majority of its claims. *Id*. at 625. As the Court put it, "The language of the Arbitration Agreement makes clear that its purpose is to force the plaintiff to arbitrate any claim she may assert against Woodfield, while excluding Woodfield from that same promise." *Id*.

The same is true here. Defendant can sue in court on virtually any claim while not affording its employees the same luxury. (*See* ECF No. 41 at 15–17.) Accordingly, the MAA and CIAA are illusory: there is no valid consideration and the arbitration agreements are unenforceable.

**2. Texas**

Under Texas law, an arbitration agreement can be illusory, and thus unenforceable, if one party can avoid its promise to arbitrate. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam). Whether an arbitration agreement was formed validly is a question for a court, not an arbitrator. *Nelson v. Watch H. Intern., L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016) ("to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the

formation of contracts.") (quoting *Carey v. 24 Hour Fitness, USA, Inc.,* 669 F.3d 202, 205 (5th Cir.2012)); *In re 24R, Inc.*, 324 S.W.3d at 567 ("When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract.").

Texas courts have found that a party can avoid its obligation to arbitrate if, for example, it has "the unrestrained unilateral authority to terminate its obligation to arbitrate" under an arbitration agreement; in that case, the agreement is illusory and unenforceable. *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 225 (5th Cir. 2014); *In re Halliburton Co.*, 80 S.W. 3d 566 (Tex. 2002).

Under Texas law, employment at-will does not provide consideration for one party's agreement to arbitrate. *In re 24R, Inc.*, 324 S.W.3d at 566–67. Instead, "binding promises are required on both sides as they are the only consideration rendered to create a contract." *Id.* (quoting *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex. 2005) (per curiam). Here, Plaintiffs' employment was at-will, meaning Defendant could end the employment at any time, so their employment does not provide independent consideration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003). Given that Defendant cannot rely on Plaintiffs' at-will employment, and cannot show that it was actually obligated to arbitrate its potential claims, the arbitration provisions here are illusory, and the Court can conclude that no agreement was formed.

### 3. New York

Under New York law, an "illusory contract—that is, an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation—is unenforceable." *Toobian v. Golzad*, 193 A.D.3d 778 (N.Y. App. Div. 2021) (quotations and citation omitted). Arbitration agreements, like other contracts, can be unenforceable if they are illusory. *Damato v. Time Warner Cable, Inc.*, 2013 WL 3968765, at *5 (E.D.N.Y. July 31, 2013) (recognizing that if the defendant had not bound itself to the arbitration clause, then the agreement to arbitrate would not be supported by mutual obligation, and there would be no legally binding promise to arbitrate for the court to enforce). Whether an agreement contains sufficient consideration presents a question of formation, for the court to decide.

However, some New York courts have found that the specific question—whether a lack of mutuality of obligation to arbitrate renders a contract illusory—appears to present a question of

contract enforcement that could be delegated to an arbitrator through a clear and unmistakable delegation clause, as opposed to a question of contract formation that must be decided by a court. *See id.*, at *6 ("Because this argument challenges the validity of the contract as a whole, and not specifically the arbitration agreement, the matter must be referred for resolution to the arbitrator."). Since New York law takes a broader view of consideration within employment agreements, the employer's consideration can be the general benefits, even if the employer does not bind itself to an arbitration policy. In another recent case, the plaintiff argued that because the relevant employees were low wage workers, the cost shifting provisions in the arbitration agreement would limit their ability to enforce the employer's promise to arbitrate. *McCrae v. Oak St. Health, Inc.*, No. 24-CV-1670 (JPO), 2025 WL 415389, at *4 (S.D.N.Y. Feb. 6, 2025). The court there found that a valid arbitration agreement can be found even if one side's promise is illusory, and therefore concluded that "[r]ather than pertaining to consideration in the sense of contract formation, [plaintiff's] arguments are better understood as alleging a species of unconscionability." *McCrae v. Oak St. Health, Inc.*, 2025 WL 415389, at *5 (S.D.N.Y. Feb. 6, 2025).

Here, however, while the CIAAs state that continued employment is consideration for agreeing to the CIAA, the MAAs do not support the employees' obligation to arbitrate by reference to employment benefits or pay. (ECF No. 34-2 at 16.) Therefore, the agreements here do not provide consideration for the MAA Plaintiffs' agreement to arbitrate.

In sum, under New York law, a valid contract requires consideration, and contracts are unenforceable where they lack consideration; however, arguments that arbitration provisions in employment contracts need not be fully mutual, so courts may characterize arguments as challenges to enforceability as opposed to formation.

## CONCLUSION

The Court can decide as a matter of contract formation: 1) that the CIAAs (and the MAAs, when present) make up the relevant agreements, 2) that the offer letters are not at issue, and 3) that under all relevant state laws, the agreements to arbitrate are illusory because they do not bind Defendant to arbitrate. The Court should deny Defendant's motion.

Dated: May 28, 2025               **NICHOLS KASTER, LLP**

                          By:     *Daniel S. Brome*
                                  Daniel S. Brome

                                  *Attorney for Plaintiffs and the Putative FLSA Collective*