1
2
3
4
5
6
7                 UNITED STATES DISTRICT COURT
8               NORTHERN DISTRICT OF CALIFORNIA
9
10
11    SELENA CONNELL, et al.,                 Case No. 24-cv-07859-NC

                  Plaintiffs,              **ORDER GRANTING IN PART
12                                         AND DENYING IN PART
                                           DEFENDANT'S MOTION TO
13          v.                             COMPEL ARBITRATION;
                                           STAYING CASE**
14    BYTEDANCE, INC.,
                                           Re: ECF 34
15                Defendant.
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

United States District Court
Northern District of California

# Table of Contents

I.    INTRODUCTION ............................................................................................... 2

II.   BACKGROUND ................................................................................................. 3

   A.   Procedural Background ................................................................................ 3

   B.   Factual Background ..................................................................................... 3

III.  LEGAL STANDARD ........................................................................................ 5

IV.   DISCUSSION .................................................................................................... 6

   A.   CIAA Plaintiffs ........................................................................................... 7

     1.   Federal Arbitrability Law Applies ......................................................... 7

     2.   No Preliminary Formation Issues the Court Must Decide .................... 8

     3.   Plaintiffs Challenge the Delegation Clauses ....................................... 13

     4.   Clear and Unmistakable Delegation .................................................... 14

     5.   Unconscionability of Plaintiffs Dorvilier, Schwartz, Van Meter, Leadley, and Naas's Delegation Clauses ...................................................................................... 17

     6.   Unconscionability and Applicability of Wilbur's Arbitration Clause .................. 32

   B.   MAA Plaintiffs ......................................................................................... 34

     1.   The Class and Collective Action Waivers are Enforceable ................. 35

     2.   Federal Arbitrability Law Applies ....................................................... 37

     3.   Preliminary Formation Issues .............................................................. 37

     4.   Plaintiffs Challenge the Delegation Clauses ....................................... 39

     5.   Clear and Unmistakable Delegation .................................................... 40

     6.   Unconscionability of the Delegation Clauses ...................................... 41

   C.   Plaintiff Melgar ........................................................................................ 50

   D.   Staying the Case ........................................................................................ 52

V.    CONCLUSION ................................................................................................ 54

United States District Court
Northern District of California

## I.    INTRODUCTION

Plaintiffs, eighteen current and former employees of Defendant ByteDance, Inc., filed a collective action alleging Defendant failed to pay them overtime in violation of the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201, *et seq.*  Defendant moves to compel arbitration and stay proceedings, arguing each Plaintiff agreed to arbitrate as part of their employee hire and onboarding paperwork.  Plaintiffs largely fall into two categories based on which documents they signed and the exact provisions in those documents.  Plaintiffs oppose arbitration by arguing the agreements to arbitrate are unconscionable and unenforceable, leading Defendant to point to delegation clauses within the agreements requiring issues of the validity, enforceability, and scope of the arbitration agreements to be decided by the arbitrator in the first instance.  Plaintiffs respond that the delegation clauses themselves are not clear and unmistakable and are otherwise also unconscionable and unenforceable.  With a focus on the delegation clauses at issue, the Court concludes all but one Plaintiff must proceed to arbitration.  Defendant's motion is therefore GRANTED IN PART and DENIED IN PART, and the case is STAYED in its entirety pending the completion of arbitration.  The Court provides a summary of the Plaintiffs and its decision on the motion as to each at the conclusion of this Order.

## II.    BACKGROUND

### A.    Procedural Background

Plaintiffs filed a collective action FLSA complaint against Defendant.  ECF 1 (Compl.).  Defendant filed a motion to compel arbitration and stay proceedings.  ECF 34 (Mot.).  Plaintiffs opposed the motion, ECF 41 (Opp'n), and Defendant replied, ECF 42 (Reply).  The Court heard oral argument on the motion on March 12 and 13, 2025.  The parties filed a supplemental chart and supplemental briefs.  ECF 47, 50, 51.  The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  ECF 7, 19.

### B.    Factual Background

Plaintiffs are a group of 18 current or former sales representatives employed by Defendant ByteDance, Inc., in Texas, New York, Illinois, or California.  Compl. ¶ 37.

Specifically, the "FLSA Collective is made up of all persons who have been employed by Defendant as Business Development Managers, Agency Development Managers, Agency Partnership Managers, Brand Partnership Managers, Client Solutions Managers, and others with similar job titles and/or duties ('Inside Sales Representatives') at any time within three years prior to this action's filing date (the 'Collective Period')." Compl. ¶ 2. Each Plaintiff has filed a consent form indicating their intent to join the collective action and bring an FLSA claim against Defendant.[1]

The Court considers 17 of the 18 Plaintiffs within two subgroups: the CIAA Plaintiffs and the MAA Plaintiffs. The six CIAA Plaintiffs—Alexa Naas, Kevin Leadley, Carlvin Dorvilier, Adam Schwartz, Kate Van Meter, and Otho Wilbur Jr.—signed both an offer letter and an early version of a Statement Regarding Employee Confidentiality and Inventions Assignment Agreement (CIAA). Five of the six CIAAs each contain a substantially similar "Arbitration and Class Action Waiver" clause that states, in relevant part:

> Employee agrees that any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association ("AAA") to be held in San Francisco County, California before a single arbitrator, in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act, as modified by the terms and conditions contained in this paragraph. By signing this Agreement, Employee agrees to waive all rights to a jury trial and the right to pursue any class or representative claims to the maximum extent allowed by law.

*E.g.*, Mot., Declaration of Xu "Renee" Ran (Ran Decl.), Ex. 17 (Naas CIAA) § 10(B). The sixth CIAA Plaintiff, Wilbur, signed an offer letter and a CIAA with a lengthier arbitration clause. Reply, Supplemental Declaration of Xu "Renee" Ran (Suppl. Ran Decl.), Ex. 37 (Wilbur CIAA) § 11(B).

---

[1] Compl., Exs. A, B; ECF 6, 8, 9, 11, 15, 16, 22, 23, 33, 40. After Defendant moved to compel arbitration, one Plaintiff withdrew her consent to the action, ECF 44, and Plaintiff Otho Wilbur Jr. filed a consent form to join the action, ECF 40.

United States District Court
Northern District of California

The eleven MAA Plaintiffs are Selena Connell, Beau Wengert, Ryan Gregory, Christopher J. Kawesa, Josh Koo, Samuel Schwaeber, Christine Quach, James Cashen, Mariel Negrón, Gigi Silver, and Rachel Atkinson. The MAA Plaintiffs each signed an offer letter and an attached Mutual Agreement to Arbitrate (MAA) document. *E.g.*, Mot., Ran Decl., Ex. 1. Each of the MAA Plaintiffs, except for Gregory, also signed a later version of the CIAA. *See, e.g.*, Mot., Ran Decl., Ex. 2.

The final Plaintiff, Katie Melgar, does not fit neatly in either the CIAA or MAA subgroup. Melgar signed an offer letter and the later version of the CIAA, which states, "Any disputes or claims arising out of or relating to or resulting from this Agreement shall be resolved through arbitration as set forth in the parties' Mutual Agreement to Arbitrate, which is incorporated by reference to this Agreement." Mot., Ran Decl., Exs. 34, 35 § 10(B). But Melgar did not sign an MAA. ECF 50 at 4 n.2.

## III.  LEGAL STANDARD

The Federal Arbitration Act (FAA) applies to any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. An agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* "The FAA thereby places arbitration agreements on an equal footing with other contracts, [citation omitted], and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Under the procedural guidelines of the FAA, a party may petition a federal court to compel arbitration, which the court "shall" order under the terms of the agreement "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* at 68; 9 U.S.C. § 4.

The "party seeking to compel arbitration[] must prove by a preponderance of the evidence that the parties formed an agreement to arbitrate." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration" under the same standards applicable to summary judgment. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91

1  (2000); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

## IV. DISCUSSION

Under federal arbitrability law, courts typically determine two "gateway" arbitrability issues in deciding whether to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). Despite "federal policy in favor of arbitration," "there is a presumption that courts will decide which issues are arbitrable." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). Parties can therefore delegate these gateway questions of arbitrability to the arbitrator to decide only if they clearly and unmistakably evidence their intent to do so. *Brennan*, 796 F.3d at 1130. Courts treat "[a]n agreement to arbitrate a gateway issue," also referred to as a delegation clause, as "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70.

In disputes over arbitration agreements that contain delegation clauses, the Ninth Circuit has instructed courts to proceed as follows:

> First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022).

This framework accounts for the Supreme Court's conclusion in *Granite Rock Co. v. International Brotherhood of Teamsters et al.* that disputes concerning contract formation are for courts to decide in the first instance, regardless of an agreement to arbitrate. 561 U.S. 287, 296–97 (2010). In contrast, whether an agreement to arbitrate is valid or enforceable is traditionally a threshold question of arbitrability that, in the

6

presence of a valid delegation clause, is to be decided by an arbitrator in the first instance. *See Brennan*, 796 F.3d at 1130; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing "[t]he issue of the contract's validity [as] different from the issue whether any agreement between the alleged obligor and obligee was ever concluded"); *Rent-A-Center*, 561 U.S. at 70 n.2 (same).

Heeding the Ninth Circuit's guidance, the Court, for both the CIAA and MAA Plaintiff subgroups, proceeds by: (1) confirming that federal arbitrability law governs the present dispute; (2) determining whether the parties raise any contract formation issues the Court must resolve, including Plaintiffs' argument that the arbitration agreements are illusory; (3) determining whether Plaintiffs challenge the delegation clauses specifically, such that the Court can continue its analysis; (4) determining whether the delegation clauses are clear and unmistakable; and (5) determining whether the delegation clauses are valid and enforceable by assessing the parties' arguments on unconscionability and lack of mutuality. The Court then turns to Plaintiff Melgar.

The Court concludes that both the CIAA and MAA Plaintiffs must proceed to arbitration. Plaintiff Melgar, however, did not agree to arbitrate.

## A.     CIAA Plaintiffs

At the outset, the Court finds that federal arbitrability law applies to the CIAA Plaintiffs' agreements, that the Court does not need to address any contract formation issues, and that Plaintiffs specifically challenge the delegation clauses in the agreements. The delegation clauses in the agreements, except for Plaintiff Wilbur's, are clear and unmistakable, and are not unconscionable under New York or Illinois law. Although the delegation clauses are infected by other unconscionable provisions under California law, these provisions are severable. And Wilbur's claim is nonetheless subject to an enforceable arbitration clause. The CIAA Plaintiffs must therefore proceed to arbitration.

### 1.     Federal Arbitrability Law Applies

As an initial matter, the Court examines whether federal arbitrability law or state arbitrability law applies to the issue of whether the Court or arbitrator should decide

United States District Court
Northern District of California

arbitrability. "[F]ederal law governs the arbitrability question by default" where an agreement is covered by the FAA, unless the parties "clearly and unmistakably designated that nonfederal *arbitrability* law applies." *Brennan*, 796 F.3d at 1129 (emphasis in original). The CIAAs each include a provision stating, "This Agreement will be governed and interpreted in accordance with the laws of [the state of employment], without giving effect to provisions governing the choice of law." *E.g.*, Naas CIAA § 10(A). This provision is then followed by the arbitration clause, which states arbitration is to be held before the American Arbitration Association (AAA) "in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act." *E.g.*, Naas CIAA § 10(B). Neither provision clearly and unmistakably indicates the parties' intent to apply state arbitrability law and, taken together, the CIAAs are at best ambiguous on the point. The Court therefore applies federal arbitrability law, and the parties appear to agree it is apt to do so. *See Brennan*, 796 F.3d at 1129.

### 2.    No Preliminary Formation Issues the Court Must Decide

The Court next considers whether two disagreements between the parties amount to issues of contract formation that the Court must decide in the first instance, regardless of any delegation or arbitration clauses. First, the parties dispute what documents make up the complete contract that contains the arbitration clause. Defendant maintains that for the CIAA Plaintiffs, the CIAA and offer letter are each "independently enforceable agreements to arbitrate." ECF 50 at 1, 3–4. *But see* Mot. 16 (stating the CIAAs "are not standalone agreements"). Plaintiffs, on the other hand, argue that the CIAA alone constitutes the complete contract. ECF 51 at 3–6. Second, Plaintiffs argue the agreements to arbitrate lack mutuality and are therefore illusory and lack consideration. Although the parties agree that issues of contract formation are for the Court to decide, the Court does not find that either dispute amounts to an issue of contract formation that it must resolve at the outset.

The line between what constitutes an issue of contract formation, reserved for the Court, and what constitutes an issue of "whether there is an agreement to arbitrate," a

threshold arbitrability question reserved for the arbitrator where there is a valid delegation clause, is admittedly thin. *See Granite Rock*, 561 U.S. at 296–97; *Brennan*, 796 F.3d at 1130. The first category of contract formation issues involves whether a contract between the parties "was ever concluded" or formed, and includes whether a contract was signed, whether the signor lacked authority to make commitments on another's behalf, whether the signor lacked mental capacity to assent, whether sovereign immunity prevented a party from entering a contract, and whether a conflicting provision in a subsequent agreement superseded a provision in the first agreement. *See Buckeye*, 546 U.S. at 444 n.1; *Caremark*, 43 F.4th at 1030; *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022), *aff'd*, *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). In contrast, the second category of arbitrability issues concerns the "formation or applicability" of the arbitration clause, and whether the parties agreed to arbitrate the merits of a dispute. *See First Options*, 514 U.S. at 942; *Granite Rock*, 561 U.S. at 297. This category concerns the validity of the arbitration clause, the enforceability of the arbitration clause, the scope of disputes the parties agreed to arbitrate, whether parties agreed to the arbitration clause, whether the arbitration clause was fraudulently induced, and anything else "which goes to the making of" the arbitration clause. *See First Options*, 514 U.S. at 945; *Buckeye*, 546 U.S. at 445; *Granite Rock*, 561 U.S. at 297. The issues within this second category of arbitrability are decided by the arbitrator where there is a valid delegation clause. And even in matters involving arbitration clauses without a delegation clause, challenges to the validity of the entire contract which houses the arbitration clause are for the arbitrator to decide. *Buckeye*, 546 U.S. at 445–46.

Against this backdrop, neither dispute between the parties is one invoking an issue of contract formation that the Court must decide at the outset. First, although the parties dispute what constitutes the complete contract here, neither party argues that a contract between Defendant and any of the CIAA Plaintiffs "was never formed," nor challenges the existence of a contract. *See Caremark*, 43 F.4th at 1030; *cf. id.* at 1031 (rejecting contract formation arguments where the party resisting arbitration did "not disavow the contracts

United States District Court
Northern District of California

entirely" or dispute certain "contractual relationships"). And, apart from Plaintiff Wilbur's agreement, the delegation and arbitration clauses between the CIAA Plaintiffs' offer letters and CIAAs do not meaningfully differ such that they require reconciliation. *See Suski*, 55 F.4th at 1230; *Coinbase*, 602 U.S. at 152 ("But, where, as here, parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs."). Instead, the parties' arguments amount to a disagreement as to the scope of the contract overall, which is a matter for the arbitrator to decide should the Court compel arbitration. ECF 51 at 7; s*ee Buckeye*, 546 U.S. at 445–46; *Suski*, 55 F.4th at 1230 (distinguishing scope of an agreement from its existence). In a practical sense, the Court's narrow focus on the validity of the delegation clauses at this stage, as detailed below, also renders it unnecessary to determine the scope of the complete contract.[2] *Cf. Arnold v. Homeaway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018) (explaining that under Supreme Court precedent, a challenge to the validity of a contract as a whole must go to the arbitrator "even when the 'contract as a whole' is an arbitration agreement, and the 'arbitration clause' at issue is an agreement to delegate threshold questions to an arbitrator."). The Court therefore only addresses whether the delegation and arbitration clauses in Wilbur's CIAA supersede those in his offer letter as necessary below. *See id.*; *infra* III(A)(4)(b).

Second, Plaintiffs' arguments that the arbitration agreements are illusory amount to validity and enforceability challenges rather than contract formation challenges. The Court notes that Plaintiffs oscillate between challenging "the arbitration provisions" and "the arbitration agreements" as illusory. *See* ECF 51 at 6, 8–10. It is not clear that these are the same thing, and Plaintiffs do not distinguish between the two. Regardless, Plaintiffs argue that the arbitration agreements lack mutuality and are illusory, thus rendering the

---

[2] There are, essentially, three layers of agreements at issue: (1) the delegation clause, which is part of (2) an agreement to arbitrate, which may be either a standalone contract or part of (3) a broader contract. *See Coinbase*, 602 U.S. at 148–49 (discussing the "multiple levels of agreements concerning arbitration" parties can form and the resulting range of possible disputes).

1    agreements "unenforceable," rather than nonexistent, even though they also argue the

2    agreements lack consideration.  ECF 51 at 6–10; Opp'n 6, 15.  And in Plaintiffs'

3    opposition brief, all references to illusoriness are made in subsections that argue the

4    delegation clauses and arbitration agreements are *unconscionable* and therefore *invalid*.

5    Opp'n 7–8, 10, 15, 17–21.  Based on Plaintiffs' own framing, the Court finds Plaintiffs'

6    illusoriness arguments speak to questions of validity and enforceability, rather than

7    formation.

8          Importantly, applicable state law distinguishing between consideration and

9    conscionability confirms the Court's conclusion that Plaintiffs' illusoriness arguments are

10   best addressed as validity or enforceability challenges.  *See Reichert*, 56 F.4th at 1227 ("In

11   determining whether a valid arbitration agreement exists, federal courts 'apply ordinary

12   state-law principles that govern the formation of contracts.'").  Under California law,

13   mutuality is a "'paramount' consideration" of substantive unconscionability, which is an

14   issue of validity and enforceability.  *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080,

15   1094 (9th Cir. 2024) (citation omitted); *see infra* III(A)(5); *Armendariz v. Found. Health*

16   *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 118 (Cal. 2000) (finding one-sided arbitration term

17   unconscionable even where it did not "render the contract illusory, i.e., lacking in mutual

18   consideration").

19         Under New York law, Plaintiffs concede that courts have considered "whether a

20   lack of mutuality of obligation to arbitrate renders a contract illusory" as an issue of

21   contract enforcement rather than formation.  ECF 51 at 9–10.  Plaintiffs are correct: courts

22   applying New York law have treated arguments that a promise to arbitrate is illusory or

23   unsupported by consideration as "concern[ing] enforceability rather than formation" where

24   the promise was part of a larger agreement, so any review of consideration would require

25   assessing consideration for the whole contract.  *See McCrae v. Oak St. Health, Inc.*, No.

26   24-cv-1670-JPO, 2025 WL 415389, at *4–5 (S.D.N.Y. Feb. 6, 2025) ("[A]rbitration

27   contracts can be validly formed even if one party's promise to arbitrate is illusory. . . .

28   Rather than pertaining to consideration in the sense of contract formation, McCrae's

arguments are better understood as alleging a species of unconscionability."); *Damato v. Time Warner Cable, Inc.*, No. 13-cv-0994-ARR-RML, 2013 WL 3968765, at *5–6 (E.D.N.Y. July 31, 2013) ("[T]he issue of illusoriness of the whole contract must be resolved by the arbitrator.").

 Courts applying Illinois and Texas law have reached the same results.  Under Illinois law, courts have treated arguments that an agreement to arbitrate is illusory and lacks mutuality as an issue of formation when the promise to arbitrate is a standalone agreement, and as an issue of enforceability, validity, and/or unconscionability when the promise to arbitrate is just one part of a larger contract.  *Compare Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26–27, 29 (Ill. App. Ct. 2005) ("Accordingly, we hold that where the agreement to arbitrate is itself a separate document, purporting to bind each party to the arbitration agreement, but subsequently creates a total exclusion of one party's obligation to arbitrate, the obligation to arbitrate is illusory and unenforceable" for lack of consideration), *with Estep v. World Fin. Corp. of Ill*, 735 F. Supp. 2d 1028, 1032–33 (C.D. Ill. 2010) (treating lack of mutuality as an issue of unconscionability where the promise to arbitrate was not a standalone agreement and instead part of a larger agreement), *Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, No. 15-cv-1163-SMY-SCW, 2017 WL 9287091, at *5 (S.D. Ill. Apr. 7, 2017) (same), *Molton, Allen & Williams, LLC v. Cont'l Cas. Ins. Co.*, No. 09-cv-6924, 2010 WL 780353, at *5 (N.D. Ill. Mar. 3, 2010) (declining to find arbitration agreement unenforceable as illusory or for lack of consideration where "the arbitration provision at issue here [wa]s contained in a broader contract between the parties"), *and Design Ben. Plans, Inc. v. Enright*, 940 F. Supp. 200, 205–06 (N.D. Ill. 1996) (same).  Texas law likewise distinguishes mutuality in an agreement to arbitrate, an issue of conscionability, from mutuality in the contract as a whole, an issue of consideration.  *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607–08 (Tex. 2005); *Sparks v. Stone St. Cap., Inc.*, No. 02-cv-0724, 2002 WL 1575404, at *5 (N.D. Tex. July 15, 2002); *cf. Arnold*, 890 F.3d at 550–51 (considering illusoriness arguments "a validity challenge" where the party resisting arbitration did "not dispute the

existence of a contract").

Even without deciding the scope of the complete contract here, the arbitration clause is only one provision in the CIAA, which largely includes non-arbitration-related provisions. Therefore, considering California, New York, Illinois, and Texas law, Plaintiffs' arguments that the arbitration agreement is illusory is best considered a validity or enforceability challenge. The Court will thus consider Plaintiffs' arguments, as applicable, when evaluating the unconscionability of the delegation clauses below.

### 3.    Plaintiffs Challenge the Delegation Clauses

Defendant argues that the Court cannot consider the validity of the delegation clauses because "Plaintiffs do not make any specific challenges to the delegation clause itself." Reply 2–3. The Court disagrees.

A party must "contest the validity of the delegation provision in particular" for the Court to review whether the delegation provision is valid and enforceable. *Rent-A-Center*, 561 U.S. at 72–75; *Caremark*, 43 F.4th at 1029. The Ninth Circuit has held that "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) (discussing *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023)). The party also "may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable [because] [t]here are many reasons why a party may be required to use nearly identical challenges to the delegation provision and the arbitration agreement as a whole." *Bielski*, 87 F.4th at 1009–10.

Here, Plaintiffs' opposition brief provides separate arguments that "there is not a 'clear and unmistakable' agreement to delegate these questions to an arbitrator" and, even if there is, "the delegation clauses, like the agreements in full, are unenforceable because they are unconscionable." Opp'n 6–10. Plaintiffs assert that the delegation clauses are unconscionable "for the same reasons that the agreements as a whole must fail," and

1    provides specific application of its arguments to the delegation clauses.  Opp'n 7–8 ("The

2    delegation clause is a perfect illustration of this fatal flaw. . . .").  Plaintiffs' arguments are

3    sufficient to specifically challenge the delegation clauses such that it is appropriate for the

4    Court to consider whether the delegation clauses are valid.

5            **4.**    **Clear and Unmistakable Delegation**

6           Having determined that Plaintiffs sufficiently challenge the delegation clauses, the

7    Court turns to the merits of whether the delegation clauses are valid.  The parties disagree

8    as to two points concerning the delegation clauses: (1) whether the agreements clearly and

9    unmistakably delegate arbitrability to the arbitrator; and (2) whether the delegation clauses,

10   even if clear and unmistakable, are unconscionable and therefore unenforceable.  The

11   Court addresses each in turn, first for the five CIAA Plaintiffs excluding Wilbur, then for

12   Wilbur.

13           **a.**    **Plaintiffs Dorvilier, Schwartz, Van Meter, Leadley, and Naas**

14          Plaintiffs argue the delegation clauses are not clear and unmistakable because the

15   CIAAs nowhere state that arbitrability is to be decided by the arbitrator and only reference

16   the AAA rules, which are not attached to the CIAA and "simply state that the [arbitrator]

17   *has the <u>ability</u> to* address such questions" of arbitrability.  Opp'n 9 (emphasis and

18   underscoring in original).  However, the Ninth Circuit and courts in this district have

19   repeatedly applied *Brennan*'s holding "that incorporation of the AAA rules constitutes

20   clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."

21   *Brennan*, 796 F.3d at 1130; *see, e.g.*, *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F.

22   Supp. 3d 854, 864–65 (N.D. Cal. 2024); *Gutierrez v. FriendFinder Networks Inc.*, No. 18-

23   cv-05918-BLF, 2019 WL 1974900, at *8–9 (N.D. Cal. May 3, 2019).[3]  The Court

24   _____

25   [3] A review of cases in this district and circuit reveals that, when a court finds delegation
     implied through incorporation of the AAA or similar rules, the arbitration clause at issue
26   often *also* states that all disputes arising from the agreement itself are subject to arbitration.
     Because the agreement contains the arbitration clause, such phrasing could be interpreted
27   to impliedly delegate arbitrability.  Although a handful of cases have recognized as much,
     *see Gutierrez*, 2019 WL 1974900, at *9, most of the cases upholding the rule in *Brennan*
28   do not rely on this distinction.  *See, e.g.*, *Fli-Lo*, 97 F.4th at 1192–93, 1201; *Baysand Inc.
     v. Toshiba Corp.*, No. 15-cv-02425-BLF, 2015 WL 7293651, at *1, 4 (N.D. Cal. Nov. 19,

14

recognizes Plaintiffs' point that the applicable AAA rule states only that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," and not that the arbitrator must or has the exclusive power to do so.  *See* Mot., Declaration of Melinda Riechert, Ex. B at 12, Rule 6(a)[4]; *Ireland-Gordy v. Tile, Inc.*, No. 23-cv-04119-RFL, 2024 WL 5162413, at *6 (N.D. Cal. Dec. 19, 2024), *appeal filed*, No. 25-403 (9th Cir. Jan. 21, 2025).  Nevertheless, the Court is bound by precedent.  The arbitration clauses state claims "shall" be arbitrated "in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act," which is sufficient to indicate delegation.  Naas CIAA § 10(B); *see In re BAM*, 733 F. Supp. 3d at 865.

Plaintiffs also argue that incorporation of AAA rules can only constitute clear and unmistakable evidence of intent to delegate "between sophisticated parties to commercial contracts," and should not be applied to "consumer contracts like the agreements here." Opp'n 9 n.5.  Whether *Brennan*'s holding applies only to delegation clauses in agreements among sophisticated parties is an oft-litigated issue the Ninth Circuit has yet to decide.  *See Patrick*, 93 F.4th at 481.  But courts within this district appear to increasingly apply *Brennan* without regard for the sophistication of the parties to the agreement.  *See In re BAM*, 733 F. Supp. 3d at 862–63; *Singh v. Payward, Inc.*, No. 23-cv-01435-CRB, 2023 WL 5420943, at *7–8 (N.D. Cal. Aug. 22, 2023).  Moreover, there is no evidence before

2025); *Khraibut v. Chahal*, No. 15-cv-04463-CRB, 2016 WL 1070662, at *1, 5 (N.D. Cal. Mar. 18, 2016); *Shierkatz RLLP v. Square, Inc.*, No. 15-cv-02202-JST, 2015 WL 9258082, at *3, 6 (N.D. Cal. Dec. 17, 2015).  The Court therefore does not draw this distinction here, even though no similar statement is present in the CIAAs.  *See McLellan v. Fitbit, Inc.*, No. 16-cv-00036-JD, 2017 WL 4551484, at *2 ("It is true that delegation was specifically spelled out in that agreement . . . but *Brennan* teaches that incorporation, rather than an express statement, does not make an agreement to delegate arbitrability ineffective."); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 475, 480–81 (9th Cir. 2024) (expanding *Brennan* to cover incorporation of JAMS rules where arbitration clause only covered disputes "arising from or relating in any way to your use or purchase of products or services," and not from the agreement itself).

[4] The Court takes judicial notice of the AAA rules at Exhibit B pursuant to Federal Rule of Evidence 201.  *See Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 930 n.2 (C.D. Cal. 2024).  At the motion hearing, the parties agreed judicial notice is appropriate.

United States District Court
Northern District of California

1  the Court concerning Plaintiffs' levels of sophistication.  *See Patrick*, 93 F.4th at 481; *Fli-*

2  *Lo*, 97 F.4th at 1200 ("[W]e reject plaintiffs' unconscionability challenge to the Delegation

3  Provision because their arguments are solely based on their supposed lack of sophistication

4  and they have pointed to nothing in the record creating a dispute of material fact regarding

5  their 'sophistication.'").

6                **b.    Plaintiff Wilbur**

7         Wilbur's CIAA both incorporates the AAA rules and includes an explicit delegation

8  clause, which states, "[T]he arbitrator, and not any federal, state, or local court, shall have

9  exclusive authority to resolve any dispute relating to the formation, enforceability,

10  applicability, or interpretation of this arbitration agreement . . . . Thus, . . . the parties

11  voluntarily waive the right to have a court determine the enforceability of this arbitration

12  agreement."  Wilbur CIAA at 13–14.  However, his CIAA also explicitly excludes from

13  arbitration "actions to compel arbitration."  Wilbur CIAA at 12.  As applied here, these

14  provisions conflict, and Wilbur's CIAA fails to establish clear and unmistakable evidence

15  of the parties' intent to delegate issues of arbitrability to the arbitrator on a motion to

16  compel arbitration.  *See Suski*, 55 F.4th at 1231 (affirming district court ruling that forum

17  selection clause conflicted with delegation clause).

18         Defendant's argument that a paragraph requiring arbitration in Wilbur's offer letter,

19  which includes a delegation clause by incorporation of the AAA rules, is a standalone

20  arbitration agreement is unavailing.  *See* ECF 50 at 3–4; *Coinbase*, 602 U.S. at 152–53

21  (holding a court must decide "whether the parties' first agreement was superseded by their

22  second").  Wilbur signed the CIAA eight days after signing the offer letter.  Suppl. Ran

23  Decl. ¶¶ 3–4.  Wilbur's CIAA contains an integration clause that states, "The paragraphs

24  set forth in Section 11.B"—the lengthy arbitration clause in his CIAA—"constitute the

25  complete agreement between the parties on the subject of arbitration and supersede any

26  other understandings on the subject.  No other representations are being relied upon by

27  either party."  Wilbur CIAA at 15.

28         Texas law governs Wilbur's CIAA.  *See Reichert*, 56 F.4th at 1227; Wilbur CIAA

United States District Court
Northern District of California

at 12 ("This Agreement will be governed and interpreted in accordance with the laws of Texas, . . ."). Under Texas law, an integration clause "preclude[s] evidence of conflicting prior agreements" and "nullifies all antecedent agreements." *Dow Chem. Co. v. Buchanan Hauling & Rigging, Inc.*, No. 21-cv-02604, 2022 WL 17406392, at *3 (S.D. Tex. Nov. 7, 2022) (citations omitted). Part or all of a prior contract may be extinguished by a later contract if the contracts are between the same parties, embrace the same subject matter, and the parties intend as much. *Id.* at 3–4. "[T]he existence of an integration clause conclusively evidences" intent. *Id.* at 4 (citation omitted). Here, the integration clause in Wilbur's CIAA indicates the parties' intent for the CIAA's arbitration clause to supersede the offer letter's arbitration clause. *See id.* The arbitration clause in Wilbur's offer letter therefore cannot be given effect.

Because Wilbur's CIAA lacks a clear and unmistakable delegation clause, the gateway issues of the validity of the arbitration clause and whether the clause covers the present dispute are for the Court to decide, which it does below. *See Brennan*, 796 F.3d at 1130.

### 5. Unconscionability of Plaintiffs Dorvilier, Schwartz, Van Meter, Leadley, and Naas's Delegation Clauses

The Court next turns to whether the clear and unmistakable delegation clauses in five of the CIAAs are unconscionable. *See Brennan*, 796 F.3d at 1132.

Arbitration agreements, like other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center*, 561 U.S. at 68. Because "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, [] the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 70. Courts are to consider only the validity of the specific provision challenged—here, the delegation clause—rather than "the validity of the contract in which it is contained." *Id.* at 70–72. That is because an

United States District Court
Northern District of California

arbitration or delegation clause challenged under § 2 "is severable from the remainder of the contract" and can be enforced regardless of the validity of the entire contract. *Id.* at 70–71 (citation omitted); *see Caremark*, 43 F.4th at 1029 (discussing how challenges to the entire contract go to the arbitrator where arbitration provision is valid). A party may "challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable"—i.e. how other provisions in the agreement "make *the fact of an arbitrator deciding arbitrability* unconscionable." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023) (emphasis in original).

The Court applies state law to determine unconscionability. *Id.* at 1001 n.2 (applying the state law specified by the agreement containing the delegation clause). The parties agree that the law of four states—Texas, New York, Illinois, and California—apply to subsets of the CIAAs depending on where a given Plaintiff was employed. *See, e.g.*, Naas CIAA § 10(A) ("This Agreement will be governed and interpreted in accordance with the laws of California" for California employee Naas).

Plaintiffs argue the delegation clauses are unconscionable for the same reasons that the agreements as a whole are unconscionable. The Court finds only that Naas's delegation clause is unconscionable under California law, but that severing the provision which renders it unconscionable salvages the delegation clause.

### a.    New York and Illinois Law

Plaintiffs Dorvilier, Schwartz, and Van Meter's CIAAs are governed by New York law. Under New York law, a contract is unconscionable if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" or it is "so grossly unreasonable . . . in the light of the mores and business practices of the time and place." *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 730 (E.D.N.Y. 2017) (citations omitted). A contract generally must be both procedurally and substantively unconscionable to be unenforceable. *Id.*

Plaintiff Leadley's CIAA is governed by Illinois law. Under Illinois law, a contract may be unenforceable based on either procedural unconscionability, substantive

unconsciability, or both. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 21 (Ill. 2006). "[T]he issue of unconsciability should be examined with reference to all of the circumstances surrounding the transaction." *Id.* at 24.

### i. Procedural Unconscionability

Plaintiffs argue the delegation clauses are procedurally unconscionable because they are part of adhesive contracts, obscured within the agreements, and the agreements were drafted by Defendant as a requirement for employment. Opp'n 7, 16, 19–20.

Under New York law, "[a]n agreement is procedurally unconscionable when, among other considerations, the party seeking to enforce the agreement used 'deception' or 'high pressure tactics' in the formation of the agreement or there was a 'disparity in bargaining power' between the parties." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013). But "it is well accepted under New York law that it is not unconscionable to be bound by an arbitration agreement in the course of securing employment," even if there is inequality in bargaining power between the employer and employee, the employer drafted the agreement, and the employee had to sign the agreement as a term of employment. *Id.* Plaintiffs have not provided any evidence of "high pressure tactics that coerce an employee's acceptance of onerous terms" such that Dorvilier, Schwartz, and Van Meter "lacked a meaningful choice" beyond entering a standard employment agreement. *See Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 378, 388 (S.D.N.Y. 2017); *Saizhang*, 236 F. Supp. 3d at 732 (concluding a "take it or leave it" employment contract does not amount to "high pressure tactics"). Moreover, parties are presumed to have read or understood the terms of a contract. *Suqin Zhu*, 291 F. Supp. 3d at 387. In *Saizhang*, a federal district court applying New York law concluded a delegation clause was not unconscionably buried in an agreement or hidden in prolix where it appeared on the third page of the agreement under a title about the application of an arbitration provision. *See* 236 F. Supp. 3d at 732. Here, the delegation clauses are on page eleven of a 15-page agreement but are the first sentence in a paragraph labelled with bolded lettering, "Arbitration and Class Action Waiver." *E.g.*, Mot., Ran Decl., Ex. 23

§ 11(B). *See id.* Therefore, the delegation clauses are not procedurally unconscionable under New York law.

Under Illinois law, a contract is procedurally unconscionable where "a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Kinkel*, 223 Ill. 2d at 22. An arbitration clause is not invalid only on the grounds that a contract was one of adhesion, i.e. a standardized contract that the non-drafting party may only accept or reject—"some added coercion or overreaching is necessary." *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 233 (Ill. Ct. App. 2008). The Illinois Supreme Court in *Kinkel* outlined factors to consider when assessing procedural unconscionability, including the circumstances of the transaction, whether a party had a reasonable opportunity to review and understand the contract terms, whether an important term was hidden in fine print, and the differences in bargaining power between the parties. 223 Ill. 2d at 22–23. But "the conspicuousness of the clause and the negotiations relating to it" are not conclusive. *Id.* at 22.

In *Kinkel*, the court "conclude[d] that there [wa]s a degree of procedural unconscionability in the service agreement signed by plaintiff because it did not inform her that she would have to pay anything at all towards the cost of arbitration," and instead said, in fine print, that fee information was available from the defendant or AAA upon request. *Id.* at 26–27. The court nonetheless did "not find this degree of procedural unconscionability to be sufficient to render the [provision at issue] unenforceable." *Id.* at 27.

Here, the delegation clause, like the fee information in *Kinkel*, is incorporated in a contract of adhesion between parties of unequal bargaining power only by reference to the AAA rules. *See id.* The Court therefore reaches the same conclusion—that any procedural unconscionability is insufficient to render the delegation clause unenforceable. Other caselaw applying Illinois law supports this conclusion. *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1007 (N.D. Ill. 2013) (declining to find an agreement procedurally unconscionable because it was a required, "take-it-or-leave-it" condition of employment);

20

*Mathys v. Hartford Gold Grp., LLC*, No. 20-cv-03927, 2020 WL 7183744, at *3 (N.D. Ill. Dec. 7, 2020) (declining to find arbitration agreement procedurally unconscionable where small, single-spaced provision was the same size as the rest of the agreement and partially bolded, and party's signature indicated he read and agreed to the terms); *Mulligan v. Loft Rehab. and Nursing of Canton, LLC*, 236 N.E.3d 1084, 1096 (Ill. Ct. App. 2023) (declining to find arbitration agreement procedurally unconscionable even though the defendant did not point out or explain arbitration provision because "courts generally hold the consumer is charged with knowledge of and assent to the terms and conditions of the contract he or she signed"); *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 240 (Ill. Ct. App. 2008) ("Nothing in this record suggests that the plaintiff could not locate, read, or understand these provisions.").

In sum, the delegation clauses for the CIAA Plaintiffs are not procedurally unconscionable under New York or Illinois contract law.

### ii.    Substantive Unconscionability

Plaintiffs raise many arguments as to why the arbitration agreements as a whole are substantively unconscionable because they "impose harsh and one-sided terms." Opp'n 4 (cleaned up). Only a handful of these arguments plausibly apply to the delegation clauses: (1) that the fee-shifting provisions improperly burden Plaintiffs; (2) that the claims and entities subject to arbitration are non-mutual; and (3) that the class action and collective action waiver is unfair.

An agreement under New York law "is substantively unconscionable if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract." *Isaacs*, 968 F. Supp. 2d at 569 (citation omitted). An agreement may be substantively unconscionable under Illinois law based on "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 223 Ill. 2d at 28.

First, Plaintiffs argue the CIAA "provides for fee shifting to the employer" because

21

"in the event that Employee breaches any of the covenants contained in [the CIAA] or initiates legal action to challenge any such covenant," Plaintiffs, as the Employees, are liable to Defendant for any fees and costs it incurs.  Opp'n 14.  Although this fee shifting provision itself might be unconscionable, the Court cannot discern how it renders the *delegation clauses* unconscionable.  Under New York and Illinois law, whether a delegation clause is substantively unconscionable based on costs to the party resisting arbitration depends on whether resolution by an arbitrator would impose higher costs than resolution in court, such that the clause would deter a would-be plaintiff from pursuing their claims.  *See Saizhang*, 236 F. Supp. 3d at 732–33 ("Plaintiffs have not made a particularized showing of their inability to pay for arbitration, or a showing that the cost differential between arbitration and litigation in court is so substantial as to deter them from bringing their claims."); *Bess*, 381 Ill. App. 3d at 241, 244 ("[W]e conclude that Bess did not meet her burden to show that her share of the arbitration fees would be cost-prohibitive and that she is financially incapable of meeting those costs.").

The fee shifting provision here applies equally to claims subject to arbitration or litigation.  Instead, as Defendant notes, the CIAAs provide that Defendant "will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and attorney's fees and other expenses to the same extent as if the matter were being heard in court)."  *E.g.*, Mot., Ran Decl. Ex. 31 § 13(B).  Plaintiffs therefore have not met their burden, as required in New York and Illinois, of "establish[ing] that [they] can afford litigation but not arbitration."  *Saizhang*, 236 F. Supp. 3d at 732; *Bess*, 381 Ill. App. 3d at 244.

Second, Plaintiffs argue the delegation clauses are unconscionable because, like the "agreements as a whole . . . there is a complete lack of mutuality."  Opp'n 7.  Specifically, Plaintiffs argue the agreements allow Defendant "to sue in court on virtually any claim" under a provision that excludes Defendant's claims for equitable relief from arbitration and permits it to bring such claims without meeting basic procedural requirements.  Opp'n 10–13.  These arguments are unavailing.  Under New York law, a provision carving out "an

22

area of potential controversy from an otherwise mutually binding arbitration agreement and giv[ing] one party the unilateral right to select the dispute resolution forum in that area" is not substantively unconscionable because "mutuality of remedy is not required in arbitration." *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 136–37, 138–39 (N.Y. 1989); *see Forbes v. A.G. Edwards & Sons, Inc.*, No. 08-cv-0552-TPG, 2009 WL 424146, at *5 (S.D.N.Y. Feb. 18, 2009) (declining to find arbitration provision substantively unconscionable even though "[n]owhere in the arbitration provisions does it state that [the defendant] also agrees to arbitrate its disputes").

Illinois law is less clear-cut, but reconcilable.  In *Hartz v. Brehm Preparatory School, Inc.*, the court held that "the lack of a mutual promise to arbitrate is not enough, on its own, to invalidate an arbitration clause" based on substantive unconscionability if it is "within a contract which is supported by other consideration."  183 N.E.3d 172, 187 (Ill. Ct. App. 2021).  The Court finds *Hartz's* holding sufficient to explain differing results in other cases.  *See, e.g.*, *Johnson*, 928 F. Supp. 2d at 106–08 (declining to find substantive unconscionability even though the defendants could avoid arbitrating employment disputes by "seek[ing] a restraining order, injunction as described, or other equitable relief" where the court found no other procedural or substantive unconscionability issues);  *Hwang v. Pathway LaGrange Prop. Owner, LLC*, No. 1-24-0534, 2024 WL 4471137, at *5–7 (Ill. Ct. App. Oct. 11, 2024) (finding "that the heavily one-sided nature of the obligation to arbitrate here supports our conclusion that the arbitration agreement is substantively unconscionable" where multiple other provisions were unconscionable).  Applying *Hartz* here, the Court finds no other procedural or substantive unconscionability under Illinois law and thus the delegation clause is not substantively unconscionable based on one-sidedness alone.  *See* 183 N.Ed.3d at 187.

Plaintiffs also argue the delegation clauses are unconscionable because the agreements prohibit Plaintiffs from assigning their rights but binds them to arbitrate claims against third-party entities related to Defendant.  Opp'n 12–13, 19.  However, Plaintiffs fail to cite caselaw finding compelled arbitration of claims against third parties

substantively unconscionable under New York or Illinois law, and the Court is not aware of any.  Finally, Plaintiffs' arguments that delegating all arbitrability disputes to the arbitrator except for those concerning the class and collective action waivers renders the delegation clauses unconscionable fails for the reasons the Court discusses below in declining to find the waivers themselves unenforceable.  *See infra* III(B)(1).

Because the delegation clauses are not unconscionable under New York or Illinois law, the clauses are enforceable and the gateway issues of arbitrability must be decided by the arbitrator.  **The Court therefore GRANTS Defendant's motion to compel arbitration as to Plaintiffs Dorvilier, Schwartz, Van Meter, and Leadley.**

### b.    California Law

Plaintiff Naas's agreement is governed by California law.  "Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree."  *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 493 (Cal. 2024).  "Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'"  *Id.* (citation omitted).  "A court should consider substantive unconscionability only after procedural unconscionability has been established."  *Id.* at 494.

### i.    Procedural Unconscionability

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'"  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citation omitted).  A contract is oppressive and procedurally unconscionable if it is a contract of adhesion, "i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"  *Id.* at 492.  "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms," *Zullo v. Superior*

United States District Court
Northern District of California

*Ct.*, 197 Cal. App. 4th 477, 484 (Cal. Ct. App. 2011) (cleaned up), "or is otherwise beyond the reasonable expectation of the weaker party." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (Cal. Ct. App. 2005).

Defendant concedes the agreement contains "a low degree of procedural unconscionability under California law" because it is a contract of adhesion.  Reply 5. Plaintiffs argue the agreement has "a moderate degree of procedural unconscionability" because it "create[s] problems of surprise."  Opp'n 16–17.  As applied to the delegation clause, the Court agrees.

Here, the delegation clause was implied only through incorporation of the AAA rules in the arbitration clause, and Naas was not provided with a copy of the AAA rules. Courts have found that "[t]he absence of the AAA . . . arbitration rules adds a bit to the procedural unconscionability," *Zullo*, 197 Cal. App. 4th at 485–86, by creating "unfair surprise."  *Lim*, 8 F.4th at 1001; *see Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1146 (Cal. Ct. App. 2012) (describing the "fail[ure] to provide plaintiffs with a copy of the relevant arbitration rules" as "significant"); *Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 929–30 (C.D. Cal. 2024); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (Cal. Ct. App. 2010) (collecting cases).  Not only would Naas have had to find the AAA rules—which, on its own might not bring the *arbitration clause* to the level of unfair surprise, *see Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1471–72 (Cal. Ct. App. 2013)—but also search the rules to discover arbitrability might be delegated to the arbitrator.  *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1243 (N.D. Cal. 2019) ("For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity – a question the Supreme Court itself has deemed []'rather arcane.'").  "These circumstances, especially in the employment context, indicate some degree of procedural unconscionability." *Lim*, 8 F.4th at 1001; *but see In re BAM*, 733 F. Supp. 3d at 868.  The Court therefore concludes

United States District Court
Northern District of California

1    the delegation clause has a moderate degree of procedural unconscionability based on the

2    oppressive nature of the adhesive agreement and the unfair surprise inherent in the implied

3    delegation clause.

### ii.    Substantive Unconscionability

5    A contract is substantively unconscionable if its terms are "unreasonably favorable

6    to the more powerful party." *Ramirez*, 16 Cal. 5th at 494 (citation omitted).  "The ultimate

7    issue in every case is whether the terms of the contract are sufficiently unfair, in view of all

8    relevant circumstances, that a court should withhold enforcement." *Id.* at 495 (citation

9    omitted).  "Agreements to arbitrate must contain at least a modicum of bilaterality to avoid

10   unconscionability." *Ronderos*, 114 F.4th at 1080 (citation omitted).

11   Plaintiffs argue that the delegation clause is substantively unconscionable under

12   California law for similar reasons as above—that the claims and entities subject to

13   arbitration are non-mutual, the fee-shifting provisions improperly burden Plaintiffs, and,

14   specific to their California arguments, the agreements bind Plaintiffs for an indefinite

15   duration.  Opp'n 17–19.

16   The Court begins with the parties' arguments concerning "the non-mutual coverage

17   of claims."  Opp'n 17.  The CIAAs contain a carve-out for Defendant to seek equitable

18   relief, excluding those claims from arbitration:

19   > Employee agrees that an impending or existing violation of any
20   > of the covenants contained in this Agreement would cause
      > Employer and its affiliates irreparable injury for which they
      > would have no adequate remedy at law . . . .  Employer shall be
21   > entitled to obtain injunctive relief prohibiting such violation, in
      > addition to any other rights and remedies available to it in
22   > contract, at law, in equity, by statute or otherwise.  Employee
      > agrees and consents that Employer shall be entitled to a
23   > temporary or permanent injunction or other equitable relief
      > against any such breach or threatened breach from any court of
24   > competent jurisdiction, without the necessity of showing any
      > actual damages or that monetary damages would not afford an
25   > adequate remedy, and without the necessity of posting any
      > bond or other security.

26   Naas CIAA § 9(A).

27   Plaintiffs argue this carveout is unconscionably one-sided and infects the delegation

28   clause because delegation only applies to claims subject to arbitration, and the carveout

excludes only claims brought by Defendant from arbitration.  Defendant argues the delegation clause applies equally to both parties because all claims subject to arbitration are subject to the delegation clause.  Defendant's stance essentially posits that Plaintiffs ask the Court to put the cart before the horse by looking at the validity of the arbitration clause to determine the validity of the delegation clause, when the Court is only supposed to address the validity of the delegation clause.  But it is not so simple as Defendant suggests, particularly where, as here, the arbitration clause does not contain a literal delegation clause—that is, an actual statement delegating arbitrability to the arbitrator. Instead, the delegation clause is effectively the same as, at least part of, the arbitration clause, its existence a legal construction found in the arbitration clause's reference to the AAA rules.

The Court is therefore persuaded by Plaintiffs' position that it is possible for the equitable relief carveout to infect the delegation clause and render it unconscionable.  And under California law, it does.  "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120.  "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" *Id.* at 117.  Such a business reality must be a "legitimate commercial need" beyond an "employer's desire to maximize its advantage based on the perceived superiority of the judicial forum." *Id.* at 117, 120.

Here, the equitable relief carveout allows only Defendant to escape arbitration of claims related to the same transaction, the CIAA, based on "an impending or existing violation" of the CIAA.  *See id.* at 120; Naas CIAA § 9(A); *contra Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 247 (Cal. Ct. App. 2014) (finding delegation clause bound

parties equally because the mutuality of claims subject to arbitration was "nearly unqualified").  Other than the arbitration clause, the CIAAs include provisions imposing confidentiality, work product protection, non-disparagement, and non-solicitation obligations on Plaintiffs as employees of Defendant.  In addition to applying only to Defendant, the equitable relief carveout "creates a lack of mutuality because it allows the employer to go to court for the claims it is most likely to bring—the intellectual property issues in that contract—while the Arbitration Agreement requires employees to go to arbitration for claims they are more likely to bring—such as wage and hour and discrimination claims."  *See Gonzalez v. CVS Health Corp.*, No. 24-cv-08156-VC, 2025 WL 1304018, at *2 (N.D. Cal. May 6, 2025); *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 115 (Cal. Ct. App. 2004).  The California Supreme Court has held on more than one occasion that a carveout comparable to the one at issue here was unconscionable. *See Ramirez*, 16 Cal. 5th at 499–50 (finding exclusion "of claims for injunctive or equitable relief based on unfair competition and the taking, use, or unauthorized disclosure of trade secrets or confidential information" unconscionable because employer was more likely than employees to bring those claims); *Armendariz*, 24 Cal. 4th at 120 ("An employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim under the agreement while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee.").

Defendant argues it "has a reasonable justification for this provision in that it allows [Defendant] to protect its business information by applying for injunctive relief where the employee's violation of the CIAA would cause irreparable injury."  Reply 9.  This is a mischaracterization of the carveout.  *See* Naas CIAA § 9(A).  Instead, the provision compels employees to agree that *any* violation of the CIAA would cause irreparable injury for which Defendant would have no adequate remedy at law.  *See id.*; *Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1048 (N.D. Cal. 2024).

Defendant's proffered justification is further undermined by the carveout's allowance that Defendant can seek equitable or injunctive relief "without the necessity of

1   showing any actual damages or that monetary damages would not afford an adequate

2   remedy, and without the necessity of posting any bond or other security."  Naas CIAA

3   § 9(A).  Courts applying California law have rejected as a legitimate commercial need

4   relief from establishing "all of the essential elements for the issuance of an injunction."

5   *See Ly*, 757 F. Supp. 3d at 1048 (quoting *Lange v. Monster Energy Co.*, 46 Cal. App. 5th

6   436, 451 (Cal. Ct. App. 2020)); *Gonzalez*, 2025 WL 1304018, at *2; *Alberto v. Cambrian*

7   *Homecare*, 91 Cal. App. 5th 482, 492–93 (Cal. Ct. App. 2023) ("[A]dditional provisions

8   that waive the employer's need to obtain a bond before seeking an injunction, waive the

9   employer's need to show irreparable harm, and require an employee to consent to an

10  immediate injunction *are* unconscionable.").  The Ninth Circuit has also rejected

11  arguments that a "one-sided provisional remedy carve-out was justified by [a] business

12  need" to protect proprietary information even when limited to *preliminary* injunctive relief.

13  *See Ronderos*, 114 F.4th at 1097–98 ("[T]his limitation does not make the preliminary

14  injunction carve-out any less one-sided; it still grants only Reddaway access to the courts,

15  even if that access is only on a preliminary basis") (discussing "a nearly identical

16  provision" and conclusion in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)

17  (en banc)).

18          The Court is less persuaded by Plaintiffs' related argument that the delegation

19  clause is unconscionable because Plaintiffs "must arbitrate claims against Defendant and

20  any other relevant entity, whereas only Defendant is (nominally) bound to arbitrate claims

21  against employees."  *See* Opp'n at 18–19.  As Defendant notes, Naas's CIAA defines the

22  term "Employer" to include "Bytedance, Inc. and its affiliates," and the arbitration, and

23  therefore delegation, clause applies to claims "relating to or resulting from Employee's

24  employment with *Employer*."  Naas CIAA at 2, 11 § 10(B) (emphasis added); *see* Reply

25  11.  Third-party affiliates of Defendant are therefore bound by arbitration to the same

26  extent as Defendant.  To the extent Plaintiffs refer to the CIAA provision prohibiting

27  employees from assigning their rights under the agreement but permitting "Employer [to]

28  assign this Agreement to its successors or affiliates," *Cook v. University of Southern*

*California* does not appear to apply to the extent Plaintiffs argue. *See* 102 Cal. App. 5th 312, 326–27 (Cal. Ct. App. 2024); Opp'n 18–19. In *Cook*, the court found an arbitration agreement unconscionably one-sided where it required an employee to arbitrate claims against the employer and a broad swath of related entities without requiring those related entities to arbitrate claims against the employee. 102 Cal. App. 5th at 326–27. But the court's conclusion appeared to be influenced by two additional factors—that the employee was bound to arbitrate against the third-party entities claims *unrelated* to the employer or her employment, and that it would be difficult for the employee to establish the related entities were "third-party beneficiaries" under the agreement to compel arbitration. *Id.* at 328. Neither of these factors applies here, where the CIAA binds Defendant's affiliates to arbitration and any assignment of the CIAA to a third-party would bind that entity as the new "Employer." *See* Naas CIAA § 10(C).

Plaintiffs' final arguments as to fee-shifting and the collective action waiver fall short for the same reasons the Court discussed above as to the other CIAAs. *See* Opp'n 19; *supra* III(A)(5)(a)(ii). And Plaintiffs fail to establish the delegation clause is unconscionable because the agreement "continue[s] with infinite duration" after the end of employment, as they have not pointed to a provision in Naas's CIAA providing as much. *See* Opp'n 19 (citing a provision in the MAAs only).

Nonetheless, the equitable relief carveout is unjustly one-sided and without a justifiable business reason, and thus renders the delegation clause substantively unconscionable. The level of substantive unconscionability is sufficiently high that, combined with the moderate level of procedural unconscionability, the delegation clause is unenforceable under California law. *See Ronderos*, 114 F.4th at 1099; *Ly*, 757 F. Supp. 3d at 1048; *Randazzo Enters., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 14-cv-02374-EJD, 2014 WL 6997961, at *6 (N.D. Cal. Dec. 11, 2014); *Martin v. Ricoh Ams. Corp.*, No. 08-cv-4853-EMC, 2009 WL 1578716, at *5 (N.D. Cal. June 4, 2009).

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iii.    Severability

However, the Court's inquiry does not end there.  Defendant asks the Court to sever any unconscionable provisions, while Plaintiffs urge that the Court should refuse to enforce the entire arbitration clause.  Mot. 19; Opp'n 21–23.

"If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results."  *Ramirez*, 16 Cal. 5th at 513.  "If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose."  *Id.* at 516.  "Even if a contract can be cured, the court should also ask whether the unconscionability should be cured through severance or restriction because the interests of justice would be furthered by such actions."  *Id.* at 516.  If "severance of the unconscionable terms would function to condone an illegal scheme [or] the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage," then "the court should refuse to enforce the agreement."  *Id.* at 516–17.  Courts may also account for "the deterrent effect" of severance and the presence of a severance clause to determine whether "enforcing the balance of the contract would be in the interests of justice."  *Id.* at 517.

Here, the Court finds it appropriate to sever the equitable relief carve-out that renders the delegation clause unconscionable.  Doing so would preserve the remainder of the delegation and arbitration clauses, which themselves are not the main purpose of the CIAA.  *See id.* at 516.  Rather, the delegation and arbitration clauses present only a dispute resolution mechanism, whereas the bulk of the CIAA is focused on outlining substantive obligations concerning confidentiality, non-solicitation, intellectual property, and publicity.  Severance is therefore "the preferred course."  *Id.* at 516.  Although not dispositive, the Court finds only the single provision carving out equitable relief from

United States District Court
Northern District of California

arbitration creates substantive unconscionability as to the delegation clause, and the CIAA contains a severance clause, both of which tip in favor of severance. *Id.* at 516–17; *see* Naas CIAA § 10(F). Plaintiffs argue the entire CIAA is so tainted with unconscionability as to preclude severance and enforcement here. Opp'n 21–23. But the Court finds it inappropriate to consider the entire scope of the contract here, where it must treat the delegation clause as a mini agreement within the larger arbitration clause. *See Rent-A-Center*, 561 U.S. at 71. When considering the arbitration clause only, the Court cannot conclude that provision alone is illegal or indicates a "systematic effort to impose arbitration on the weaker party," particularly in the absence of the equitable relief carveout. *See Ramirez*, 16 Cal. 5th at 516–17.

The Court therefore severs from Naas's CIAA § 9(A).[5] As a result, the delegation clause is enforceable. Plaintiffs are not precluded from raising further arguments concerning the unconscionability of the arbitration clause or contract as a whole and the futility of severability to the arbitrator. **The Court GRANTS Defendant's motion to compel arbitration as to Plaintiff Naas.**

### 6. Unconscionability and Applicability of Wilbur's Arbitration Clause

Because the Court found Plaintiff Wilbur's CIAA lacks a clear and unmistakable delegation clause, the Court must decide whether the arbitration clause in his CIAA is unconscionable and whether it applies to the present dispute. *See supra* III(A)(4)(b); *Brennan*, 796 F.3d at 1130. Wilbur's arbitration clause is not unconscionable under Texas law and applies to compel arbitration here.

Under Texas law, "[a]n arbitration agreement is unenforceable if it is procedurally unconscionable, substantively unconscionable, or both." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499, 502 (Tex. 2015) (citation omitted).

---

[5] Although the section containing the equitable relief carveout includes a final sentence not yet discussed by the Court that provides Defendant costs and attorney's fees in actions to enforce the CIAA or remedy a breach of the CIAA, the sentence does not stand alone and conflicts with the terms of the arbitration clause absent the rest of the section. It is therefore struck along with the remainder of the section.

Whether an agreement is unconscionable depends on the totality of the circumstances. *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 131 (Tex. Ct. App. 2018). Plaintiffs raise the same arguments as to why the arbitration clause is unconscionable as discussed above with respect to the delegation clauses.

"Whether an agreement is procedurally unconscionable rests on whether the contract results in unfair surprise or oppression." *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 933 (S.D. Tex. 2008) (citation omitted). "As a general rule, contracts of adhesion are not automatically unconscionable." *Id.* "When a party signs a contract containing an arbitration provision, the party does not have to be told about the provision, but is presumed to know the contents of the contract." *Id.* Moreover, "an arbitration provision is not procedurally unconscionable simply because an employer made it a part of a 'take it or leave it' offer to at-will employees," even in the presence of pressure to sign the agreement quickly. *Id.* at 934. Only cases in which a party "was literally incapable of understanding the agreement" have been found procedurally unconscionable under Texas law. *Id.* Plaintiffs do not offer any evidence that Wilbur was incapable of understanding the arbitration clause in his agreement. As a result, the arbitration clause is not procedurally unconscionable under Texas law on the grounds argued by Plaintiffs. *See Micheletti*, 213 F. Supp. 3d at 848 (rejecting "Plaintiff's argument that the delegation provision was oppressive because the service agreement was too long, or that the drivers were pressured into agreeing to arbitration"); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 603 (Tex. Ct. App. 2008) ("Absent a duty to disclose, an agreement is not unconscionable merely because one party was not informed of the arbitration clause," even where the arbitration clause was on the back of the last page and part of a contract of adhesion).

"The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Id.* at 603–04 (citations omitted). The basis for substantive unconscionability "must be sufficiently shocking or gross." *Ridge Nat. Res.*,

564 S.W.3d at 131.  Like New York and Illinois law, Texas law determines whether an arbitration clause is unconscionable based on whether the costs to the party resisting arbitration would be higher in arbitration than in litigation and deter the party from bringing their claims.  *See Lennar Homes of Tx. Inc. v. Rafiei*, 687 S.W.3d 726, 731–32 (Tex. 2024).  Because the arbitration clause requires Wilbur to pay only part of the filing fee and Defendant to pay any costs unique to arbitration, Plaintiffs have not met their burden of "establish[ing] that [they] can afford litigation but not arbitration."  *See id.* at 733; *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 848 (W.D. Tex. 2016); Wilbur CIAA § 11(B).  As to Plaintiffs' arguments that the equitable relief carveout renders the arbitration clause unconscionable, "an arbitration agreement is not so one-sided as to be unconscionable just because certain claims are excepted from those to be arbitrated.  [citation omitted].  That is, an arbitration agreement that requires arbitration of one party's claims but does not require arbitration of the other party's claims is not so one-sided as to be unconscionable."  *Royston*, 467 S.W.3d at 501.  The same is true even when the one-sided obligation to arbitrate extends to benefit third parties to the contract.  *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006).

Finally, the parties do not appear to contest whether the arbitration clause applies to the dispute at issue, as "all claims pertaining to Employee's employment" are subject to arbitration, with limited exceptions.  *See* Wilbur CIAA § 11(B).  Wilbur's claim here alleges Defendant failed to pay overtime in connection with his employment and does not fall under any of the enumerated exceptions.  *See id.*  **As a result, the Court GRANTS Defendant's motion to compel arbitration as to Plaintiff Wilbur.**

### B.    MAA Plaintiffs

The Court proceeds through the same analysis for the MAA Plaintiffs' agreements as it did above for the CIAA Plaintiffs' agreements by (1) confirming the applicability of federal arbitrability law; (2) determining whether the parties raise any contract formation issues the Court must resolve; (3) determining whether Plaintiffs challenge the delegation clauses specifically; (4) determining whether the delegation clauses are clear and

1    unmistakable; and (5) determining whether the delegation clauses are valid and
2    enforceable.  However, the Court must first address whether the collective action waivers
3    in the MAAs are valid and enforceable, which it concludes they are.

4         After determining the scope of the larger contracts that encompass the MAAs, the
5    Court finds the delegation clauses in the MAAs are clear and unmistakable, and are
6    conscionable and enforceable under New York, Illinois, and Texas law.  Although the
7    delegation clauses are infected by other provisions and unconscionable under California
8    law, the offending provisions are again severable.  As a result, the MAA Plaintiffs must
9    proceed to arbitration.

**1.    The Class and Collective Action Waivers are Enforceable**

11        Each MAA contains a class and collection action waivers provision that states, in
12   relevant part:

> The Company and you agree to bring any claim on an
> individual basis and not on a class and/or collective action
> and/or consolidated basis. Accordingly, . . . [t]here will be no
> right or authority for any dispute to be brought, heard or
> arbitrated as a collective action and the Arbitrator will have no
> authority to hear or preside over any such claim. . . . [A]ny
> claim that all or part of the Class Action Waiver and/or
> Collective Action Waiver is invalid, unenforceable,
> unconscionable, void or voidable, may be determined only by a
> court of competent jurisdiction and not by an arbitrator.

18   *E.g.*, Mot., Ran Decl., Ex. 12, Attach. B (Kawesa MAA) § 5.

19        The parties agree that the Court must decide the enforceability of the class and
20   collective action waivers here, an action brought by an FLSA collective, based on the
21   waivers' language.  Opp'n 6; Reply 1, 5; *see Mohamed v. Uber Techs., Inc.*, 848 F.3d
22   1201, 1213 (9th Cir. 2016) (concluding the court should evaluate a waiver of
23   representative claims where the arbitration agreement "specifically required the district
24   court, and not the arbitrator, to consider . . . challenges to the enforceability of the []
25   waiver").  Defendant argues the waivers are enforceable.  Reply 1.  Plaintiffs argue the
26   waivers are unconscionable and unenforceable for the same reasons as the delegation
27   clauses and the agreements overall but offer no specific application of these arguments to
28   the waivers.  Opp'n 15.  Supreme Court precedent forecloses Plaintiffs' arguments.

United States District Court
Northern District of California

In *AT&T Mobility LLC v. Concepcion*, the Supreme Court held that the purpose of the FAA "is to ensure the enforcement of arbitration agreements according to their terms," and that state law precluding the waiver of class and collective actions violates the FAA. 563 U.S. 333, 343–44 (2011). In *Epic Systems Corporation v. Lewis*, the Supreme Court applied *Concepcion* to hold that state law rendering an arbitration agreement invalid, revocable, or unenforceable under § 2 of the FAA does not provide a basis for a court to refuse to enforce a class or collective action waiver in an FLSA collective action. 584 U.S. 497, 508–10 (holding "an argument that a contract is unenforceable *just because it requires bilateral arbitration* . . . impermissibly disfavors arbitration whether it sounds in illegality or unconscionability"). Following *Concepcion* and *Epic*, courts understand the FAA to preempt state law rendering a class or collective action waiver in an arbitration agreement unconscionable. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 924 (Cal. 2015); *Reno v. W. Cab Co.*, No. 18-cv-00840-APG-NJK, 2020 WL 5606897, at *4 (D. Nev. Sep. 18, 2020) ("Consequently, under the FAA, class or collective action waivers in arbitration agreements are enforceable even if state law would find those provisions unconscionable or against state public policy."). As a result, class and collective action waivers are enforceable in arbitration agreements and FLSA actions, and do not provide grounds to deny a motion to compel arbitration. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1013 (9th Cir. 2023); *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1127 (N.D. Cal. 2018); *Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1048–49 (N.D. Cal. 2012). In fact, courts consistently enforce class and collective action waivers in FLSA actions even outside of arbitration agreements because the FLSA does not provide a substantive right to a collective action. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Greenhill v. RV World, LLC*, 727 F. Supp. 3d 798, 810 (S.D. Ill. 2024); *Porteous v. Flowers Foods, Inc.*, 766 F. Supp. 3d 1093, 1107 (D. Or. 2025).

### 2.    Federal Arbitrability Law Applies

Federal arbitrability law governs the issue of whether the Court or arbitrator should decide the arbitrability of the MAAs because each MAA states the "Agreement is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." *E.g.*, Kawesa MAA § 1; *see Brennan*, 796 F.3d at 1129.

### 3.    Preliminary Formation Issues

The parties again raise two disputes: (1) what documents make up the complete contracts that contain the MAAs and its provisions compelling and governing arbitration; and (2) whether the agreements to arbitrate lack mutuality and are therefore illusory and lack consideration.  As before, the parties agree that issues of contract formation are for the Court to decide.  The Court therefore considers whether either dispute, as applied to the MAAs, amounts to a contract formation issue it must decide in the first instance.

As to the first dispute, Defendant argues the MAAs are the complete contracts and stand alone because they contain an integration clause and neither the MAA Plaintiffs' offer letters nor CIAAs supersede the arbitration provisions in the MAAs.  ECF 50 at 4–5. Plaintiffs argue the MAAs must be considered with the CIAAs, but not the offer letters, "since they address overlapping topics and [we]re executed together," and based on the integration clauses in the MAAs and CIAAs.  ECF 51 at 2–6.  But the Court concludes, as it did above, that the parties' dispute is best considered a disagreement as to the scope of the contracts, rather than a challenge to whether contracts were ever formed or exist, and therefore an issue more appropriate for the arbitrator to decide.  *See supra* III(A)(2); *Buckeye*, 546 U.S. at 444–46, 444 n.1; *Caremark*, 43 F.4th at 1030; *Suski*, 55 F.4th at 1230.

Nonetheless, the Court does need to determine the scope of the complete contracts containing the MAAs and its arbitration provisions to assess whether Plaintiffs' argument that the agreements lack consideration and are illusory must be resolved by the Court or an arbitrator.  Under applicable state law, if the MAAs are standalone agreements, Plaintiffs' illusoriness challenge must be considered a challenge to the consideration of the contract

as a whole and an issue for preliminary decision by the Court.  In contrast, if the MAAs are part of a larger contract, Plaintiffs' illusoriness challenge is best considered a challenge to the validity, enforceability, and conscionability of the MAAs, and an issue of arbitrability for the arbitrator to decide.  *See Armendariz*, 24 Cal. 4th at 118; *McCrae*, 2025 WL 415389, at *4–5 (applying New York law); *Vassilkovska*, 358 Ill. App. 3d at 26–27, 29; *Estep*, 735 F. Supp. 2d at 1032–33 (applying Illinois law); *In re AdvancePCS*, 172 S.W.3d at 607–08 (applying Texas law); *Arnold*, 890 F.3d at 550–51.

Here, state contract law dictates that the MAAs are part of larger contracts that include the offer letters and CIAAs signed by the MAA Plaintiffs.  It is a "long-standing principle" of contract law "that instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together."  *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (Ill. 2007) (citation omitted); *Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 251 (S.D.N.Y. 2008); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004); *R.W.L. Enters. v. Oldcastle, Inc.*, 17 Cal. App. 5th 1019, 1027 (Cal. Ct. App. 2017).  Defendant's declaration of Xu Ran and accompanying exhibits indicate that almost all the MAA Plaintiffs signed their offer letters, MAAs, and CIAAs on the same day.  *See generally* Mot., Ran Decl.  All three documents are between the same parties and for the same purposes of hiring and onboarding.  Mot., Ran Decl. ¶ 7.

Moreover, parties may incorporate another document into a contract by reference where they intend to do so, and the document is clearly identifiable and accessible.  *See Wiczer v. Wojciak*, 30 N.E.3d 670, 680 (Ill. Ct. App. 2015) ("Contracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents."); *Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co., Inc.*, 209 F. Supp. 3d 547, 553 (E.D.N.Y. 2016) (finding an explicit statement in a contract incorporating another agreement by reference sufficient to clearly state the parties' intent); *Com. Bank of Tx., N.A., v. Luce*, 92 S.W.3d 636, 639 (Tx. Ct. App. 2002) ("Attachments to a contract specifically referred to in the contract are considered part of the contract."); *In re*

1  *Facebook Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019).

2       The offer letters here refer to both the MAAs and CIAAs.  First, the offer letters

3  state, "As a condition of your employment and in consideration for the payments and

4  benefits described in this letter, you will be required to sign the Company's confidentiality

5  and inventions assignment agreement attached hereto as Attachment A (the '**Employee**

6  **Confidentiality and Inventions Assignment Agreement'**)."  *E.g.*, Mot., Ran Decl., Ex.

7  12 § 7 (emphasis and underscoring in original).  Second, the offer letters state, "As set

8  forth more fully in the arbitration agreement attached hereto as Attachment B (the 'Mutual

9  Agreement to Arbitrate'), you agree that all disputes, controversies or claims that are

10  covered by the Mutual Agreement to Arbitrate . . . shall be decided by a single arbitrator

11  . . . ."  The MAAs are labeled "Attachment B."  *E.g.*, Kawesa MAA.  The CIAAs also

12  include a provision stating, "Any disputes or claims arising out of or relating to or resulting

13  from this Agreement shall be resolved through arbitration as set forth in the parties'

14  Mutual Agreement to Arbitrate, which is incorporated by reference to this Agreement."

15  *E.g.*, Mot., Ran Decl., Ex. 13 (Kawesa CIAA) § 10(B).  These statements in the offer

16  letters and CIAAs, and reference to the MAAs and CIAAs as "attachments," are sufficient

17  to demonstrate intent to incorporate the MAAs and CIAAs into the offer letters and to

18  clearly identify the MAAs and CIAAs.  The Court therefore considers the offer letter,

19  MAA, and CIAA for each MAA Plaintiff as a complete contract.

20       Because the MAAs are part of larger contracts, California, New York, Illinois, and

21  Texas law indicates that the contracts may be supported by consideration even absent a

22  mutual agreement to arbitrate.  The Court therefore declines to assess the consideration

23  underpinning the larger contracts and instead will consider Plaintiffs' arguments that the

24  MAAs are illusory and lack mutuality as validity and enforceability challenges when

25  addressing the conscionability of the delegation clauses below.

26       **4.    Plaintiffs Challenge the Delegation Clauses**

27       Plaintiffs' briefing challenges the validity of the delegation clauses for both the

28  CIAA and MAA Plaintiffs using the same arguments.  Because the Court finds Plaintiffs

specifically challenge the delegation clauses for the CIAA Plaintiffs, Plaintiffs thus specifically challenge the delegation clauses in the MAAs for the same reasons. *See supra* III(A)(3); Opp'n 6–10; *Rent-A-Center*, 561 U.S. at 72–75; *Fli-Lo*, 97 F.4th at 1199. The Court proceeds to evaluate whether the delegation clauses in the MAAs are valid by addressing whether the clauses clearly and unmistakably delegate the gateway issues of arbitrability to the arbitrator and whether the clauses are unenforceable for unconscionability.

### 5.    Clear and Unmistakable Delegation

Each of the MAAs contains an explicit delegation clause that states:
> [E]xcept as this Agreement otherwise provides, the Arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, as stated in the "Class and Collective Action Waivers" section below, the preceding sentence does not apply to the Class Action Waiver and/or Collective Action Waiver.

*E.g.*, Kawesa MAA § 1. The class and collective action waivers provision then confirms that any claim as to the validity, enforceability, or conscionability of the waivers "may be determined only by a court of competent jurisdiction and not by an arbitrator." *E.g.*, Kawesa MAA § 5.

The language of the delegation clauses is sufficiently expansive and unambiguous to clearly and unmistakably delegate questions of arbitrability to the arbitrator because it provides the arbitrator with exclusive authority to resolve disputes concerning the "validity, applicability, enforceability, [and] unconscionability" of the MAA. *See Mohamed*, 848 F.3d at 1208–09. Plaintiffs argue the MAAs "point[] in two directions about who will decide enforceability," and therefore do not contain clear and unmistakable delegations, because the delegation clauses do not apply to disputes over the class and collective action waivers. Opp'n 8. The Court agrees with Defendant that this argument is unavailing in light of *Mohamed*. *See* Reply 3–4.

In *Mohamed*, the Ninth Circuit held that an arbitration agreement similar to the

MAAs required an arbitrator to decide questions of arbitrability even though the delegation clause exempted disputes "pertain[ing] to the arbitrability of class action, collective action, and representative claims."  848 F.3d at 1208–09.  Like in *Mohamed*, the exemption of the class and collective action waivers from the delegation clauses here does not undercut the delegation clauses because the clauses are prefaced by, "[E]xcept as this Agreement otherwise provides."  *Id.* at 1209 ("The clause describing the scope of the arbitration provision was prefaced with '[e]xcept as it otherwise provides,' which eliminated the inconsistency between the general delegation provision and the specific carve-out in the 2013 Agreement.").  Because the delegation clauses in the MAAs are clear and unmistakable regardless of the exemption of claims concerning the class and collective action waivers, the Court must enforce the clauses "according to their terms" unless the delegation clauses are unenforceable based on a contract defense like unconscionability. *Id.*

### 6.    Unconscionability of the Delegation Clauses

The Court again must focus only on whether the delegation clauses are unconscionable under applicable state contract law.  *See Rent-A-Center*, 561 U.S. at 68; *Holley-Gallegly*, 74 F.4th at 1001–02 & n.2.  Plaintiffs Quach, Cashen, and Negrón's contracts are governed by New York law; Schwaeber's by Illinois law; Connell, Silver, Wengert, and Atkinson's by Texas law; and Gregory, Kawesa, and Koo's by California law.

Plaintiffs raise the same arguments as before as to why the delegation clauses in the MAAs are unconscionable.  The Court therefore limits its analysis where its previous explanation of the conscionability of the delegation clauses in the CIAAs applies equally to the delegation clauses in the MAAs.

### a.    New York, Illinois, and Texas Law

Plaintiffs argue that the delegation clauses in the MAAs, like in the CIAAs, are procedurally unconscionable under New York, Illinois, and Texas law because they are part of adhesive contracts, hidden in prolix, and imposed by Defendant as requirements for

41

United States District Court
Northern District of California

employment.  Plaintiffs argue the delegation clauses in the MAAs are substantively unconscionable because of a lack of mutuality in the claims and entities subject to arbitration and a fee-shifting provision.

As to procedural unconscionability, the delegation clauses appear on the bottom of the first page of the MAAs, which are the second documents in the three-document contracts.  The clauses are in the same font size as the rest of the MAA and contract provisions.  As before, the law of all three states does not support a finding of procedural unconscionability based only on adhesion, even when a defendant, as an employer, drafts the contract as a prerequisite to employment.  *See Isaacs*, 968 F. Supp. 2d at 570; *Johnson*, 928 F. Supp. 2d at 1007; *Perez*, 592 F. Supp. 2d at 933–34.  And the delegation clauses are not disguised by small print or otherwise so difficult to find that they are procedurally unconscionable.  *See Saizhang*, 236 F. Supp. 3d at 732; *Bess*, 381 Ill. App. 3d at 240; *Perez*, 592 F. Supp. 2d at 933–34.

As to substantive unconscionability, Plaintiffs' argument that certain contract provisions improperly shift fees to Plaintiffs again fails because it is unclear how the provisions Plaintiffs oppose render the *delegation clauses* unconscionable.  Plaintiffs do not establish how the costs of arbitration would surpass those of litigation or dissuade Plaintiffs from bringing claims.  *See Saizhang*, 236 F. Supp. 3d at 732–33; *Bess*, 381 Ill. App. 3d at 241, 244; *Lennar Homes*, 687 S.W.3d at 731–32.

Plaintiffs' arguments that the delegation clauses in the MAAs are substantively unconscionable because of an imbalance in the claims and entities subject to arbitration fare even worse here than they did as applied to the CIAA Plaintiffs' agreements.  Unlike in those agreements, the MAAs allow either party, instead of only Defendant, to "apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy."  *E.g.*, Kawesa MAA § 2.  Although another provision of the contracts allows Defendant to seek such relief "without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security," this imbalance is

42

insufficient to render the delegation clauses substantively unconscionable under New York, Illinois, or Texas law. *E.g.*, Kawesa CIAA § 9; *see Sablosky*, 73 N.Y.2d at 136–39; *Hartz*, 183 N.Ed.3d at 187; *Royston*, 467 S.W.3d at 501.

Accordingly, the Court finds the delegation clauses in the MAAs are not unconscionable under New York, Illinois, or Texas law. **The Court therefore GRANTS Defendant's motion to compel arbitration as to Plaintiffs Quach, Cashen, Negrón, Schwaeber, Connell, Silver, Wengert, and Atkinson.**

### b.   California Law

#### i.   Procedural Unconscionability

As before, the parties agree the delegation clauses have at least a low degree of procedural unconscionability because the clauses are part of adhesive contracts required for employment. *See* Opp'n 16–17; Reply 5; *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922–23 (9th Cir. 2013). However, Plaintiffs' argument that the delegation clauses have a moderate degree of procedural unconscionability based on unfair surprise falls flat here. *See* Opp'n 16–17. "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (citation omitted). Unlike the CIAA Plaintiffs, the MAA Plaintiffs did not have to find and reference another source outside of their contracts to learn of the delegation clauses. *See id.* Although the delegation clauses are found on page four of 19-page contracts consisting of three discrete documents, and are not bolded or highlighted, the delegation clauses also are not hidden in a smaller font and are on the first page of the MAAs under a heading about how the agreement applies. *E.g.*, Kawesa MAA § 1. Taken together, the length of the contracts, absence of anything highlighting the delegation clauses, and adhesive nature of the contracts indicate a low degree of procedural unconscionability. *See Nagrampa*, 469 F.3d at 1283–84 (finding "minimal" procedural unconscionability); *Lim*, 469 F.3d at 1001 (finding "some degree of procedural unconscionability").

1

### ii.    Substantive Unconscionability

Plaintiffs argue the delegation clauses in the California MAAs are substantively unconscionable because the claims and entities subject to arbitration are non-mutual, the agreements to arbitrate bind Plaintiffs for an indefinite duration, and the fee-shifting provisions improperly burden Plaintiffs.  Opp'n 17–19.  As noted above, the relevant contract provisions for the MAA Plaintiffs differ from those of the CIAA Plaintiffs.

First, the MAAs contain an equitable relief carve-out that allows for either party, not just Defendant, to "apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy."  Kawesa MAA § 2.  This carve-out, alone, is insufficient to establish unconscionable one-sidedness infecting the delegation clauses because the carve-out applies equally to both parties and the claims either are most likely to bring.[6]

Two of the three California MAA Plaintiffs, Kawesa and Koo, also signed the later version of the CIAAs as part of their contracts, which contains a provision limiting the requirements for Defendant to obtain equitable relief:

> Employee agrees that an impending or existing violation of any of the covenants contained in this [CIAA] would cause Company and its affiliates irreparable injury for which they would have no adequate remedy at law . . . Employee agrees and consents that Company shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from any court of competent jurisdiction without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.

Kawesa CIAA § 9; Mot., Ran Decl., Ex. 15 § 9.

Multiple courts applying California law have suggested that a provision that eliminates the requirements to obtain equitable relief for only one party is substantively unconscionable for lack of mutuality, regardless of whether both parties can seek equitable

---

[6] The Court also notes the MAAs exempt from arbitration "representative actions for civil penalties filed under the California Private Attorney General Act ('PAGA')," which enables claims by employees against employers.  Kawesa MAA § 2; Cal. Lab. Code § 2698 *et seq.*

relief outside of arbitration.  *See Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 89 (Cal. Ct. App. 2014) ("[T]he arbitration agreement lacks mutuality when it presumes harm to the car wash companies in their confidentiality claims . . . . [and] does not state a reciprocal presumption of harm favoring employees in their claims."); *Blair v. INFORM Software Corp.*, No. 22-cv-06000-LB, 2023 WL 137471, at *8–9 (N.D. Cal. Jan. 8, 2023) ("First, the injunctive-relief provision—INFORM can seek injunctive relief without proving damages or irreparable injury—is substantively unconscionable because it is one-sided."); *Alberto*, 91 Cal. App. 5th at 492 (finding an injunctive relief provision unconscionable where it "waived Cambrian's need to obtain a bond before seeking an injunction, required Alberto to agree in advance to the existence of irreparable injury, and required Alberto to consent to the issuance of an injunction").  Courts have also concluded such provisions are not supported by a legitimate business reason.  *See Ly*, 757 F. Supp. 3d at 1048.  The Court therefore finds the one-sided elimination of requirements to obtain equitable relief unconscionable, though to a lower degree than if Plaintiffs could not seek equitable relief in court at all.  This unconscionability impacts the delegation clauses in Kawesa and Koo's MAAs because it allows Defendant and its claims to more easily escape arbitration than Plaintiffs and their claims, and thus escape delegation.

Second, the MAAs differ from the above-discussed CIAAs in ways that lend credence to Plaintiffs' arguments that the arbitration and delegation clauses here lack mutuality as to covered entities and are therefore substantively unconscionable.  *See* Opp'n 18–19.  The MAAs require arbitration of "any dispute arising out of or related to" a Plaintiff's employment with the "Company."  Kawesa MAA § 1.  The Company is defined to include "Bytedance Inc. or one of its affiliates, subsidiaries, including but not limited to TikTok Inc. or its parent companies."  Kawesa MAA § 1.  The MAAs continue on to state that they apply to:

> any dispute, past, present, or future, that the Company may have against you or that you may have against: (1) Company; (2) its officers, directors, principals, shareholders, members, owners, employees, or agents; (3) Company's benefit plans or the plan's sponsors, fiduciaries, administrators, affiliates, or agents; and (4) all successors and assigns of any of them. Each

45

1  and all of the entities or individuals listed in (1) through (4) of
the preceding sentence can enforce this Agreement.

2  Kawesa MAA § 1.

3  Thus, by their own terms, the MAAs require Plaintiffs to arbitrate any claims they

4  have against four categories of entities and individuals, only one of which—the

5  Company—is required to arbitrate its claims against Plaintiffs.  The provision is

6  comparable to that found unconscionably one-sided in *Cook*.  *See* 102 Cal. App. 5th at

7  326–29.  In *Cook*, the court concluded a similar arbitration provision conferred a benefit on

8  the defendant "and its broadly-defined 'related entities' that [wa]s not mutually afforded

9  to" the plaintiff.  *Id.* at 327–28.  The same is true here.  And like in *Cook*, "[n]o

10  explanation is offered as to why [Plaintiffs] should be required to give up the ability to

11  ever bring claims in court against a [Defendant] employee that are unrelated to"

12  Defendant.  *Id.*[7]

13  The limitation present here, which was absent in *Cook*, that only claims arising

14  from or related to Plaintiffs' employment must be arbitrated does little to ease the

15  imbalance.  *See id.* at 321–22, 327; Kawesa MAA § 1.  It is easy to think of a range of

16  disputes that could relate to an employee's employment but not necessarily involve or

17  relate to Defendant as the employer.  For example, if a Plaintiff wanted to bring a claim

18  against a fellow employee, but not Defendant, for harassment that occurred in the

19  workplace or for an instance of defamation facilitated by workplace email, the fellow

20  employee could compel arbitration, and invoke the delegation clause, but the Plaintiff

21  might not be able to same.  As the *Cook* court recognized, "[t]here is no question that it is

22  more difficult for a party to enforce an arbitration agreement against a nonsignatory than it

23

24  [7] The Court recognizes that parties continue to dispute the reasoning and conclusions in *Cook*, but, absent conflicting and controlling authority, the Court finds its reasoning

25  persuasive and applicable here, particularly given mutuality is a paramount consideration of unconscionability under California law.  *See Ronderos*, 114 F.4th at 1094; *see, e.g.*,

26  *Cocom v. ABM Aviation, Inc.*, No. 24-cv-8389-WLH-MAR, 2024 WL 5701894, at *6–9 (C.D. Cal. Dec. 27, 2024), *appeal filed*, No. 25-3246 (9th Cir. May 21, 2025); *Sandler v.*

27  *Modernizing Med., Inc.*, No. 24-cv-00812-AJB-BJC, 2024 WL 4469217, at *7–8 (S.D. Cal. Oct. 9, 2024), *appeal filed*, No. 23-6623 (9th Cir. Oct. 30, 2024); *Tanner v. Tax Servs.*

28  *of Am., Inc.*, No. 25-cv-01940-DMR, 2025 WL 1580737, at *5–6 (N.D. Cal. June 4, 2025) (describing *Cook* as distinguishing its analysis from cases concerning delegation clauses).

is for a nonsignatory to enforce an arbitration agreement against a party." 102 Cal. App. 5th at 327. The same goes for a hypothetical dispute between two of the Plaintiffs here; if Kawesa or Koo sued the other for a claim relating to their employment, whoever is sued as the defendant could compel arbitration, even though they would not be able to do the same if the roles were reversed. Defendant offers no justification for this nonsensical result. The lack of mutuality between the individuals and entities compelled to arbitrate, and thus subject to the delegation clause, benefits a slew of non-signatory parties who can compel arbitration against Plaintiffs without being subject to the same, rendering the delegation clause substantively unconscionable.

Third, Plaintiffs argue provisions in the MAAs that impose arbitration for an indefinite duration render the arbitration and delegation clauses substantively unconscionable. Opp'n 19. The MAAs include two relevant duration provisions. The first, as excerpted above, states the MAA applies "to any dispute past, present, or future." *E.g.*, Kawesa MAA § 1. The second states that the MAA "will survive the termination of your employment and the expiration of any benefit, and it will continue to apply upon your transfer to any parent, subsidiary or affiliate of the Company or re-employment by the Company if your employment is ended but later renewed." *E.g.*, Kawesa MAA § 9.

Here the Court is less persuaded by Plaintiffs' reliance on *Cook*. In *Cook*, the appellate court affirmed the trial court's conclusion that an arbitration agreement was unconscionable where it expressly stated it would survive the termination of an employee's employment. But *Cook* provides little in the way of explanation or supporting caselaw, and instead appears to consider the impact of the duration provision in combination with other overbroad provisions in the arbitration agreement. Caselaw pointing in the other direction is likewise shaky. The court in *Shierkatz* rejected an argument that the "temporal scope" of a delegation clause was unconscionable, finding the defendant "persuasively argue[d] that there is nothing unconscionable about an arbitration provision that applies to claims that relate to a particular agreement, but that nonetheless arise after the termination of the operative agreement." 2015 WL 9258082, at \*10. *Shierkatz* cited to *Balandran v.*

47

*Labor Ready, Inc.*, for this proposition, but *Balandran* itself cites only to a New Jersey Supreme Court decision for support.  *See Shierkatz*, 2015 WL 9258082, at *10; *Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522, 1530 (Cal. Ct. App. 2004) (citing *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 89 (N.J. 2002)).  And Defendant's argument that the MAA provisions are not indefinite because claims are limited by statute of limitations is inapposite.  *See* Reply 11–12.  The provisions expressly state the agreement will apply to future periods of reemployment, and therefore to any claims that could accrue at that time.  The parties do not point to any caselaw discussing whether arbitration or delegation clauses applying to past disputes are unconscionable.

Nonetheless, the Court is not persuaded that the durational provisions of the MAAs render the delegation clauses substantively unconscionable, given courts have regularly applied arbitration clauses to both retroactive and future disputes.  For example, in *Salgado v. Carrows Restaurants, Inc.*, the court construed broad language requiring arbitration of "any claim" to apply to disputes that occurred before the arbitration agreement was signed.  33 Cal. App. 5th 356, 361–62 (Ct. Cal. App. 2019).  Similarly, in *Franco v. Greystone Ridge Condominium*, the court held that a provision requiring arbitration of all "pre-hire through post-termination" claims relating to the plaintiff's employment with the defendant compelled arbitration of claims existing before the agreement was executed.  39 Cal. App. 5th 221, 229–30, 232 (Cal. Ct. App. 2019); *see also Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208, 223–25 (Cal. Ct. App. 2023) (discussing *Salgado* and *Franco* to find an arbitration provision applied only to forward-looking claims); *Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 941–42 (N.D. Cal. 2011) (applying arbitration provision that covered "past, present, or future" claims to disputes arising after termination of employment); *Vazquez v. SaniSure, Inc.*, 101 Cal. App. 5th 139, 142, 144–46 (Cal. Ct. App. 2024) (finding an arbitration agreement did not apply to subsequent employment where it did not explicitly say as much).  Although neither *Salgado* nor *Franco* addressed the conscionability of the durational provisions and instead focused on the threshold issue of applicability, it is hard to imagine such provisions are unconscionable when California

1    courts routinely enforce them.  *See Franco*, 87 Cal. App. 5th at 227 ("[T]he basic goal of

2    contract interpretation is to give effect to the parties' mutual intent at the time of

3    contracting" as expressed in the contract).

4         Finally, Plaintiffs fail to establish fee provisions in the MAAs or larger contracts

5    render the delegation clauses unconscionable because the MAAs provide for Defendant to

6    pay any costs beyond what a Plaintiff would pay in court, and the fee-shifting provisions in

7    the accompanying CIAAs apply equally to arbitration and litigation.  *See* Kawesa MAA

8    § 7; Kawesa CIAA § 9.

9         The lack of mutuality in covered claims and entities subject to arbitration and

10   delegation, combined with the adhesive nature of the contracts, infects the delegation

11   clauses in the California MAAs to render them unconscionable and unenforceable, unless

12   the offending provisions can be severed.

13                    **iii.    Severability**

14        The Court again finds severance is appropriate here because removal of the two

15   offending provisions that infect the delegation clauses from the contracts would preserve

16   the delegation clauses and MAAs.  *See Ramirez*, 16 Cal. 5th at 516.  The delegation

17   clauses themselves are not the main purpose of the MAAs, and the MAAs are only one

18   part of the larger contracts, which touch on multiple terms and conditions of employment.

19   *See id.*  Because the Court must focus on the delegation clauses at this stage, Plaintiffs'

20   arguments that the one-sided terms indicate an unconscionable taint and systemic effort to

21   impose arbitration on the weaker parties are best addressed by the arbitrator in conjunction

22   with review of the conscionability of the MAAs and larger contracts.

23        The Court therefore severs from Gregory, Kawesa, and Koo's MAAs the two

24   sentences in the first paragraph of § 1 that establish one-sided coverage of claims and

25   entities, beginning with "Except as otherwise provided in this Agreement" and ending with

26   ". . . can enforce this Agreement."  Kawesa MAA § 1; Mot., Ran Decl., Ex. 14, Attach. B

27   § 1; Mot., Ran Decl., Ex. 11, Attach. B § 1.  The Court also severs from Kawesa and

28   Koo's contracts § 9(A) of the CIAAs, which is the carve-out that eliminates requirements

1    for Defendant to seek equitable relief.  Kawesa CIAA § 9(A); Mot., Ran Decl., Ex. 15

2    § 9(A).  As a result, the delegation clauses remain enforceable.  **The Court GRANTS**

3    **Defendant's motion to compel arbitration as to Plaintiffs Gregory, Kawesa, and Koo.**

4         **C.    Plaintiff Melgar**

5         Finally, the parties contest whether Plaintiff Melgar is subject to an agreement to

6    arbitrate.  As the parties' plainly dispute the existence of an arbitration agreement between

7    Melgar and Defendant, the Court must resolve the issue as one of contract formation.  *See*

8    *Caremark*, 43 F.4th at 1030.

9         On April 25, 2021, Melgar signed an offer letter that contains a full arbitration

10   clause.  Mot., Ran Decl. ¶ 42 & Ex. 34 (Melgar Offer Letter) § 11.  On May 21, 2021,

11   Melgar signed the later version of the CIAA, which states, "Any disputes or claims arising

12   out of or relating to or resulting from this Agreement shall be resolved through arbitration

13   as set forth in the parties' Mutual Agreement to Arbitrate, which is incorporated by

14   reference to this Agreement."  Mot., Ran Decl. ¶ 43 & Ex. 35 (Melgar CIAA) § 10(B).

15   Defendant concedes Melgar did not sign an MAA.  ECF 50 at 4 n.2.  California law

16   governs the formation of Melgar's offer letter and CIAA.  Melgar Offer Letter § 11;

17   Melgar CIAA § 10(A).

18        The parties' dispute requires the Court to determine whether the arbitration clause

19   in Melgar's CIAA is fully integrated on the issue of arbitration such that it supersedes the

20   arbitration clause in Melgar's offer letter.  The Court concludes it is, and it does.

21        Under California law, "the terms of a final, integrated contract 'may not be

22   contradicted by evidence of any prior agreement or of a contemporaneous oral

23   agreement.'"  *Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807 (Cal. Ct. App. 2012)

24   (citing Cal. Code Civ. Proc. § 1856(a)).  A contract "may be explained or supplemented by

25   evidence of consistent additional terms unless the writing is intended also as a complete

26   and exclusive statement of the terms of the agreement."  Cal. Code Civ. Proc. § 1856(b).

27   "The crucial issue" for a court "in determining whether there has been an integration is

28   whether the parties intended their writing to serve as the exclusive embodiment of their

United States District Court
Northern District of California

1   agreement.  The instrument itself may help to resolve that issue." *Grey*, 204 Cal. App. 4th

2   at 807 (citation omitted).  Indeed, integration clauses have "been held conclusive on the

3   issue of integration." *Id.* (citation omitted).

4        Melgar's CIAA contains an integration clause that provides the CIAA "sets forth

5   the entire agreement and understanding between Employer and Employee relating to the

6   subject matter herein and, as of the Effective Date, supersedes all prior discussions

7   between the parties."  Melgar CIAA § 10(H).  The CIAA includes the subject matter of

8   arbitration and is therefore the final expression on that subject, superseding the earlier-

9   agreed arbitration clause in the offer letter.  *See Grey*, 204 Cal. App. 4th at 807–08

10  (concluding an integration clause that said the agreement superseded all other "discussions

11  and understandings" included written agreements and not just oral ones); *Garcia v. ISS*

12  *Facility Servs., Inc.*, No. 19-cv-07807-RS, 2020 WL 13907337, at *2–3 (N.D. Cal. Mar.

13  20, 2020).

14       Defendant denies this outcome by arguing that "because there is no inconsistency

15  between the two arbitration provisions, there is nothing to modify or supersede," ECF 50 at

16  6, and that Melgar's CIAA "incorporates and reinforces the arbitration provision in the

17  offer letter."  Reply 14.  Not so.  The arbitration clauses in the offer letter and CIAA are

18  not consistent; the offer letter outlines specific rules and procedures governing the

19  arbitration process, whereas the CIAA states that arbitration is to be governed by the terms

20  of a separate document, the MAA.  Particularly without any MAA, the Court cannot

21  conclude the two arbitration clauses impose the same terms.  Defendant also seeks to avoid

22  this result by arguing the offer letter "expressly contemplates that the two documents be

23  read together, not one superseding the other."  ECF 50 at 6.  However, because the CIAA

24  is fully integrated as to arbitration, Defendant cannot rely on the offer letter as parol

25  evidence to "contradict[] the plain terms of the [CIAA's] integration clause." *See Grey*,

26  204 Cal. App. 4th at 808–09; Cal. Code Civ. Proc. § 1856(a) ("Terms set forth in a writing

27  intended by the parties as a final expression of their agreement with respect to the terms

28  included therein may not be contradicted by evidence of a prior agreement or of a

contemporaneous oral agreement.").

In addition, the CIAA's arbitration clause is insufficient to establish Melgar entered into an agreement to arbitrate because the clause fails to incorporate an MAA setting forth the terms of arbitration. *See Reichert*, 56 F.4th at 1227 ("[T]he party seeking to compel arbitration[] must prove by a preponderance of the evidence that the parties formed an agreement to arbitrate."). For one contract to incorporate another document or agreement by reference, "[w]hat's needed is simply that the reference to the document be unequivocal, that the document be called to the attention of the contracting parties, and that the terms of the document be easily available to the contracting parties." *In re Facebook Litig.*, 402 F. Supp. 3d at 791. Although Melgar's CIAA explicitly states that it incorporates the MAA by reference, the MAA and its terms were not available to Melgar or, for that matter, Defendant, who has not been able to locate an MAA executed by Melgar. By signing the CIAA, Melgar only agreed to arbitration as provided by the MAA. Without successful incorporation of the MAA, the Court cannot conclude Melgar agreed to arbitration. **The Court therefore DENIES Defendant's motion to compel arbitration as to Plaintiff Melgar.** Nonetheless, as discussed below, the case is stayed, including as to Melgar.

### D.    Staying the Case

Defendant asks the Court to stay the case pending the completion of arbitration. Mot. 1, 20. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024). "A motion to stay, therefore, is mandatory and must be granted as to all matters within the scope of the arbitration agreement." *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016) (citations omitted). Accordingly, the Court must stay the claims for the Plaintiffs that must proceed to arbitration.

As to Plaintiff Melgar, however, a district court retains discretion whether to proceed with or stay non-arbitrable claims and litigation among non-arbitrating parties "in

52

the interest of saving time and effort for itself and litigants." *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). "Where a stay is proposed, the court should weigh the competing interests that will be affected, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Congdon*, 226 F. Supp. 3d at 990 (citations omitted) (discussing factors established in *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Here, the Court finds the interests of efficiency and judicial economy merit staying the entire case, including Melgar's claim, without unfairly prejudicing the parties. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," including arbitration proceedings). The first two CMAX factors weigh in favor of staying. Plaintiffs have not identified any hardship or damage Melgar would suffer from a stay or objected to Defendant's request for a stay. *See Armstrong v. Michaels Stores, Inc.*, No. 17-cv-06540-LHK, 2018 WL 6505997, at *14 (N.D. Cal. Dec. 11, 2018). Defendant argues generally that the Court should refrain from further proceedings in this case because "ordering arbitration may obviate any need for notice to the putative collective at all or otherwise impact the notice content, thereby promoting judicial economy and avoiding confusion." Mot. 20.

The third CMAX factor also weights in favor of staying the entire case. Melgar and each of the Plaintiffs compelled to arbitration are all opt-in Plaintiffs bringing the same claim. *See Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1130 (N.D. Cal. 2018) (granting stay where "the factual allegations underlying the claims [we]re the same"); *Congdon*, 226 F. Supp. 3d at 990–91 (denying stay where non-arbitrable claims were brought by opt-out plaintiffs, and only non-opt-out plaintiffs had arbitrable claims).

Proceeding with only Melgar's claim would thus be inefficient. *See Ambercroft Trading Ltd. v. Biddy*, No. 19-cv-06810-LHK, 2020 WL 1820599, at *7 (N.D. Cal. Apr. 10, 2020) ("[L]etting the case proceed" with only some of the parties "would be both inefficient and ineffectual."). This is especially so given that the arbitrator, in deciding the threshold issues of arbitrability, may find that other Plaintiffs' claims besides Melgar's are not subject to arbitration, in which case "it would waste judicial resources for the Court to have proceeded with the lawsuit only on" Melgar's claim. *See Pac. States Indus. Inc. v. Am. Zurich Ins. Co.*, No. 18-cv-04064-LHK, 2018 WL 6106383, at *8 (N.D. Cal. Nov. 21, 2018); *Wilcox*, 586 F. Supp. at 568 ("[T]he arbitrator is likely to decide issues that will, at least, streamline subsequent proceedings before this Court."). The Court concludes that staying Melgar's claim would promote efficiency for the Court and the parties. **The Court therefore STAYS the entire case pending the conclusion of arbitration.**

## V.    CONCLUSION

In sum, the Court GRANTS IN PART Defendant's motion to compel arbitration for Plaintiffs Dorvilier, Schwartz, Van Meter, Leadley, Wilbur, Quach, Cashen, Negrón, Schwaeber, Connell, Silver, Wengert, Atkinson, and, after severing portions of their agreements, Naas, Gregory, Kawesa, and Koo. The Court DENIES IN PART Defendant's motion to compel arbitration for Plaintiff Melgar. Below, the Court provides a chart summarizing its conclusions by identifying each Plaintiff, the subgroup in which they fall, the documents they signed, the state law applicable to their agreements, and the basis for the Court's decision granting or denying the motion to compel.

The Court also STAYS the case in its entirety pending the conclusion of arbitration. Because the case is stayed, the Court will not yet rule on Plaintiffs' pending motion for distribution of judicial notice. *See* ECF 13.

The parties must file a joint status report of no more than five pages every six months from the date of this Order. The first report will be due January 2, 2026. Any party may move to lift the stay at any time.

54

United States District Court
Northern District of California

| Plaintiff | Offer Letter | MAA | CIAA | State Law | Decision and Reasoning |
|---|---|---|---|---|---|
| **CIAA Plaintiffs** | | | | | |
| Dorvilier | x | | x | NY | Granting, delegation clause |
| Schwartz | x | | x | NY | |
| Van Meter | x | | x | NY | |
| Leadley | x | | x | IL | |
| Naas | x | | x | CA | Granting after severing, delegation clause |
| Wilbur | x | | x | TX | Granting, arbitration clause |
| **MAA Plaintiffs** | | | | | |
| Quach | x | x | x | NY | Granting, delegation clause |
| Cashen | x | x | x | NY | |
| Negrón | x | x | x | NY | |
| Schwaeber | x | x | x | IL | |
| Connell | x | x | x | TX | |
| Silver | x | x | x | TX | |
| Wengert | x | x | x | TX | |
| Atkinson | x | x | x | TX | |
| Gregory | x | x | | CA | Granting after severing, delegation clause |
| Kawesa | x | x | x | CA | |
| Koo | x | x | x | CA | |
| **Other** | | | | | |
| Melgar | x | | x | CA | Denying, no arbitration agreement |

//

//

//

**IT IS SO ORDERED.**

Dated:  July 1, 2025

_____
NATHANAEL M. COUSINS
United States Magistrate Judge